DRAKENBERG, Respondent, vs. KNIGHT and another, Appellants.

*September 14—October 10, 1922.*

*Automobiles: Negligence: Law of the road: Cutting corner: Contributory negligence: Pedestrian not adopting best mode of escape: Master and servant: Use of car on owner's business: Question for jury.*

1. The driver of an automobile who turned into a cross street and without excuse passed to the left instead of to the right of the intersection, thus cutting the corner, in violation of sub. 1, sec. 1636—49b, Stats., was guilty of negligence.
2. In an action for injuries sustained by a pedestrian who was struck by an automobile while attempting to cross a street at an intersection, the question whether the pedestrian was guilty of negligence contributing to the injury in turning back on the approach of the automobile instead of proceeding across the street is for the jury.
3. When a sudden emergency exists or is thought to exist, a person is not held to the strict exercise of ordinary care, for there is no time for the exercise of judgment and deliberate action upon it, and failure to take the best means of escape is not necessarily negligence.
4. Evidence showing that H., who was the son-in-law and employee of K., with whom he lived, drove the car of K. while on the business of the owner and for his own convenience

when K. did not require it; that he had, unknown to K., who was absent from the city, driven the car to work and later used it to take a chain used by K.'s employees to be repaired, and that upon returning from work he drove a short distance to the postoffice to secure K.'s mail and his own, is sufficient to sustain a finding of the jury that at the time of the accident, which occurred just after he had left the postoffice, H. was using the car with the consent of and in furtherance of K.'s business.

APPEAL from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed.*

Action to recover for injuries sustained by plaintiff as a result of being struck by an automobile owned by defendant *Knight* and driven by defendant *Hale.*

Second street and Rittenhouse avenue are intersecting streets in the city of Bayfield, running north and south, and east and west, respectively. It appears that defendant *Hale* started the car from a point near the south curb of Rittenhouse avenue, ran east a few yards, and turned north on Second street, and in doing so failed to keep to the right of the intersection of the streets. Plaintiff was crossing Second street from east to west on the north side of the avenue. The substance of the testimony indicates that *Hale* was driving on the left side of the street; that plaintiff saw the car when he was near the center of the street; that he went forward one or two steps, then turned and tried to go back to the side of the street from which he had started; and that defendant changed the course of the car in an effort to avoid the accident. When plaintiff was struck he was at a point a little to the east of the center of the street and near the crosswalk.

Defendant *Hale* was the son-in-law of *Knight,* lived at his home, and assisted him in the care of his orchards. *Knight* testified that he kept the car for his own use; that *Hale* was forbidden to use it without his express consent on each occasion; that he sometimes gave his consent for the use of the car either in furtherance of the business or for

*Hale's* own convenience; that *Hale* sometimes used the car without his consent; and that the chief reason he restricted the use of it by *Hale* was that he wanted it for his own personal use.    There was testimony indicating that he always gave his consent for the use of the car by *Hale* for business purposes when he himself did not need it.  ·Witnesses for plaintiff testified that they had often seen *Hale* driving the car.

*Hale* testified that he was forbidden to use the car without the consent of *Knight;* that he did not take the car on many ₐoccasions without such consent; that during some periods he used the car as often as four or five times a week; that he took it sometimes for his own convenience and sometimes for use in *Knight's* business; and that there were occasions when he was justified in taking the car in the absence of *Knight.*

On the day of the accident it appears that *Hale* went to work in one of the orchards a mile and a half from town in company with other employees of *Knight;* that during the day a drive chain was broken; that *Hale* carried the chain to a blacksmith shop in town, stopping at the house on the way; that *Knight* was there, and that (according to the testimony of defendants) nothing was said about the car.    After getting the chain fixed he stopped at the house and found that no one was home and that the car was in the garage.    He took the car and returned to the orchard, taking the chain with him.    At the close of the day's work in the orchard he drove the car into town, taking with him another employee, and stopped at the postoffice to get the mail from the box which he and *Knight* used together, but which was paid for by *Knight.*    The accident occurred as above stated just after the visit to the postoffice.

It appears that plaintiff was dragged several feet after the car struck him; that he went to the side of the street and sat on the curb; that soon after he visited a doctor, who found that his left ankle had been sprained, his knees cut,

and his arms and elbows scratched; that he walked to his home unassisted; was confined to his bed several days; that shortly after, with the aid of crutches, he was able to be about his tailor shop and work part of the time. Evidence was introduced tending to show that his head had been injured and that as a result his memory had been impaired.

Ir .. pecial verdict the jury found that defendant *Hale* at the time of the accident was using the car with the consent of defendant *Knight;* that the car was being used in furtherance of *Knight's* business; that the fact that *Hale* was driving on the left side of the street was the proximate cause of the injuries; that plaintiff was not guilty of a want of ordinary care that contributed proximately to produce his injuries; and that the damages suffered amounted to $800. Judgment was entered accordingly.

For the appellants there was a brief by *Lamoreux & Cate* of Ashland, and oral argument by *C. A. Lamoreux.*

For the respondent the cause was submitted on the brief of *Walsh & Morris* of Washburn.

JONES, J.    The evidence is undisputed that although it was the duty of defendant *Hale* to pass to the right of the intersection of the two streets he passed to the left; thus cutting the corner and violating sub. 1, sec. 1636—49*b,* Stats. No excuse for this appears in the testimony, and it is plain that *Hale* was guilty of negligence. *Haggerty v. Rain,* 177 Wis. 374, 186 N. W. 1017.

It is contended, however, by defendants' counsel that the plaintiff was guilty of negligence contributing to the injury and that the negligence of defendant was not the proximate cause. The principal ground assigned for this claim is that the plaintiff ought to have continued on his way while crossing the street instead of turning back as the car approached him. Defendants' counsel argue that if plaintiff had not turned back the car would have passed five or six feet behind him, while plaintiff's counsel argue that if he had

not turned back there was danger of his being crushed between defendant's car and another parked on the west side of Second street.

There were some conflicts in the evidence as to the speed of the car. There was evidence on the part of defendants that the car was going from eight to ten miles an hour, and on the part of plaintiff that the rate of speed was as high as fifteen miles. It was agreed that there was quite an ascent on Second street, and evidently the car was not going at a low speed when the turn was made.

There was evidence that the plaintiff was dragged from eight to ten feet after the collision. No warning was given of the approach of the car. When the danger became imminent, both parties evidently sought to avoid the accident. It may be that in retreating plaintiff did not adopt the wisest course, but it does not necessarily follow that he was therefore guilty of contributory negligence. He was not bound to anticipate that a car would approach on the wrong side of the street.

The case was submitted to the jury on instructions to which there seems no valid objection. They found that there was no contributory negligence and that the negligence of defendant was the proximate cause of the injury. Their decision was approved by the trial court, and we cannot say as a matter of law that their finding was not supported by credible evidence.

It is clear that a sudden emergency arose, and the language of Mr. Justice VINJE in another case is quite pertinent:

"It is clear that what may be termed an emergency situation existed or was thought to exist by both parties when plaintiff first moved north in front of defendant's automobile. Under such circumstances a person is not held to the strict exercise of ordinary care, for there is no time for the exercise of judgment and deliberate action upon it. The evidence showed that from the time defendant first saw

plaintiff till she was struck not more than ten seconds elapsed. Less than half of this was taken up by the attempts of each to avoid the other. In such situations action is instinctive rather than deliberate, and for that reason a failure to take the best means of escape is not necessarily negligence." *Parkes v. Lindenmann,* 161 Wis. 101, 108, 151 N. W. 787.

Defendants' counsel rely on other language used in the case just cited, but in various respects not necessary to enumerate the two cases are easily distinguishable.

It is urged by defendants' counsel that the judgment should be reversed as to *Knight* because, as they claim, the car was not being used in his business at the time of the accident and because it was being used without his knowledge or consent. To sustain this contention they cite *Gewanski v. Ellsworth,* 166 Wis. 250, 164 N. W. 996, and *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016. In each of these cases the testimony was that the employees of defendants were using cars solely for their own convenience. It was argued in those cases that the work of the master was facilitated by the use which was made of the cars by the employees, since such use would tend to promote more friendly relations and cause more faithful performance of duty and thus promote the interests of the employers. The court held that such supposed advantage would not create liability for acts clearly beyond the scope of employment.

In the case before us there is quite a different situation. It is undisputed that on the afternoon of the day in question *Hale,* in going and returning from his work, was using the car not in his own business but in that of the employer. In carrying a heavy chain it was not unreasonable that the car should be used. On account of absence from the city *Knight* had no need or occasion to use the car. *Hale* had often driven the automobile in his employer's business and for his own convenience when it was not needed by his employer and when no express consent had been given. He had every reason to suppose that no objection would be

made to his conduct in thus using the car in this instance in the business of his employer. and father-in-law. Notwithstanding the accident and the irritation it might have caused, no complaint was made when *Knight* learned the facts.

Defendants' counsel claim that the employment of *Hale* ceased when he returned to the city; that on his return he should have placed the car in the garage; that the accident was the result of going to the postoffice with the car; and that this deviation was purely on the business of *Hale* and beyond the scope of his employment. The postoffice was only about three blocks from the place of residence of the defendants. We cannot hold as a matter of law that in going these few blocks to get the mail of *Knight* as well as his own *Hale* was acting outside the scope of his employment. On this branch of the case the following recent cases are directly in point: *Thomas v. Lockwood Oil Co.* 174 Wis. 486, 182 N. W. 841; *Parker v. Barber,* 177 Wis. 588, 188 N. W. 193; *Smith v. Yellow Cab Co.* 173 Wis. 33, 180 N. W. 125.

Although both defendants testified that *Hale* had no authority to take the car except by special permission and that no such permission had been given on that day, there were numerous circumstances which the jury could properly consider in this connection. Among these facts were the following: the relationship and intimacy between the defendants and their families; the frequent and continued use of the car by *Hale* on other occasions, both for his own convenience and in the business of the owner; the fact that on the afternoon in question the owner was absent and had no personal use for the car; that on that afternoon there seemed to be good reason for its use in the business, and that it was so used; and the fact fairly inferred from the testimony that it was only when *Knight* wanted the car for his own use that *Hale* was not permitted to use it.

It is true that it was necessary for the plaintiff to establish that the injury occurred in the scope of *Hale's* employ-

ment and that the car was then used with *Knight's* consent. The jury were not bound to accept as conclusive the denials of authority by the interested parties, qualified as they were by their other testimony, and we cannot say as a matter of law that there was not credible evidence to meet both of the conditions of liability.

The claim was made by defendants' counsel that the damages were excessive. We do not consider that the judgment should be disturbed on that ground.

*By the Court.*—Judgment affirmed.