EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and
another, Respondents, vs. BROWER and another, Appellants.

*March 10—April 7, 1937.*

486

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, attorneys for the Standard Accident Insurance Company, and *Howard A. Hartman* of Milwaukee of counsel, and *Sanderson & Stapleton* of Sturgeon Bay, attorneys for C. D. Brower, and oral argument by *Mr. Hartman* and *Mr. Thomas A. Sanderson.*

For the respondents there was a brief by *Bruemmer & Bruemmer* of Kewaunee, and oral argument by *L. W. Bruemmer.*

FRITZ, J.  The appellants, Brower and the Standard Accident Insurance Company, contend that they are not liable for Tollefson's causal negligence because he was operating his own truck as an independent contractor, and that the court erred in ruling, on motions after verdict, that Tollefson was acting as an employee of Brower. The existence of that relationship had to be established by the plaintiffs to entitle them to recover from Brower and his insurance carrier for Tollef-

son's negligence. The following facts were established by undisputed evidence: At the time of the accident, on July 19, 1932, Tollefson was engaged in hauling a load of stone from the Sturgeon Bay Company's quarry to the stone piles of a contractor, William Conway, who was constructing a state highway several miles from the quarry, and to whom the Sturgeon Bay Company had agreed to deliver stone. On May 11, 1932, that company and Brower had entered into a contract under which he agreed, for a flat rate per ton hauled, to deliver the stone for it from its quarry to Conway in a manner satisfactory to that company, Conway, and the state inspector on the highway project; and under that contract Brower had also agreed to furnish the necessary trucks and to carry insurance thereon which would fully protect Brower, as well as the Sturgeon Bay Company, in all cases against liability on their part for damages to property or travelers on the highways. To provide such protection, Brower procured an indemnity policy from the Standard Accident Insurance Company. Brower's trucking operations were limited at the time in question to the performance of that contract. As he owned no trucks which he could use in such performance, he contracted with twelve to twenty truck owners, including Tollefson, to do the hauling. Tollefson had never trucked before for Brower. Their contract was verbal, and only to the effect "that Tollefson was to receive twenty cents per ton for the stone he hauled with his truck." Under that contract Tollefson hauled from June 4 to August 20, 1932, and was paid every week by Brower for the tonnage hauled during the preceding week on a truck which he owned, and which was licensed in his name. He was free to drive it himself or have it driven by his agent or employee. He furnished all the gasoline and oil, and made his own repairs. He was at liberty to quit or lay off work at his pleasure; and the only requirement as to his hours, when he chose to work, was that, of necessity,

they would have to be while the quarry was in operation and his truck could be loaded. At the company's bins he would take his place in line with other trucks when loading. Instructions as to the kind of stone to haul, and the place or Conway's binstock piles, to which it was to be delivered, were given to him by either the state highway inspector or his associate or by an agent of Conway. No directions were ever given to Tollefson by Brower or his agents. Neither he nor his agents ever gave any instructions to Tollefson as to the manner of driving his truck, his speed, the route he was to take, the amount or the number of loads he was to carry, or when he was to report for or to quit work. The only part taken by Brower and his agent in respect to the trucking was to see that the stone was hauled and the job kept moving, in order to accomplish the end result required under his contract with the Sturgeon Bay Company. If the hauling was not progressing sufficiently, Brower did not urge Tollefson or the other truckers engaged in the work, but merely arranged to put on additional truckers. As the court said in its decision, "The evidence further shows that Tollefson was not hindered in the manner in which he did the trucking; he did it as he pleased with respect to the amount of load, or route he would take, or the time he was to make; that he came and went as he wished, he could drive his truck himself, or hire someone to drive it for him; that he could quit at times of his own choice."

Those undisputed facts do not establish that Brower had any such right of control, under his contract with either Tollefson or the Sturgeon Bay Company, over the details of the work performed by Tollefson, or that Brower or his agents ever attempted to exercise any such control as to constitute him the employer of Tollefson. On the contrary, those facts rather compel the conclusion that Tollefson was an independent contractor. At all events, there is an absence of proof to

establish unequivocally that Brower had or in fact exercised such right of control over the details of Tollefson's work as to render him an employee of Brower. No conclusion to that effect can be based on mere conjecture or speculation favorable to the plaintiffs, who have the burden of establishing that Tollefson was an employee of Brower. As we said in *Creamery Package Mfg. Co. v. Industrial Comm.* 211 Wis. 326, 330, 248 N. W. 140,—

"Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture."

And, as we said in *Hills Dry Goods Co. v. Industrial Comm.* 217 Wis. 76, 84, 258 N. W. 336,—

"The inference must not only be rational, but it must be a logical deduction from the established facts and not one of several inferences which might with equal propriety be drawn from the same facts."

That right to control the details of the work by the party for whom it was performed is of crucial significance when there is an issue as to the nature of the relationship. As we said in *Kolman v. Industrial Comm.* 219 Wis. 139, 141, 262 N. W. 622,—

"The most significant *indicium* of an independent contractor is his right to control the details of the work. The principal test to be applied in determining whether one rendering services for another is an employee or an independent contractor is whether the employer has the right to control the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the

work, the time of the employment, the method of payment, and the right of summary discharge of employees."

To the cases cited in support of that rule, there can be added *Henry Haertel Service, Inc., v. Industrial Comm.* 211 Wis. 455, 248 N. W. 430; *Kassela v. Hoseth,* 217 Wis. 115, 258 N. W. 340 (in which there was an issue as to the status of a person using his automobile in the continuous performance of work for another); and also *York v. Industrial Comm.* 223 Wis. 141, 155, 269 N. W. 726, in which we also recognized the rule that the mere procuring or controlling of the end result of work, by one for whom it is performed, without directing the means or details in which it is performed, does not necessarily constitute the person who performs the work an employee. As we then said, "Any employer of an independent contractor has that right." That rule was applied in *Medford L. Co. v. Industrial Comm.* 197 Wis. 35, 221 N. W. 390, in holding that a provision in a contract which reserved to a party for whom work was performed only such supervision or control as was necessary to see that the ultimate result contracted for was produced, did not constitute the one who was to perform the work an employee of the other. Consequently, the mere fact that Brower saw to it that the stone was hauled to keep the job moving in order to accomplish the end result of his contract with the Sturgeon Bay Company, did not constitute Tollefson his employee.

However, although there was no evidence of any right or attempt on Brower's part to direct or control the details of Tollefson's performance of his work, the trial court finally said in his decision,—

"While it is true, Brower did not control the details as to how Tollefson hauled the stone, yet I do not doubt but that he had the power to control them if he wished or to kick Tollefson off the job if he refused to obey,—and Tollefson would

have no redress for any breach of contract he claimed to have had. Tollefson then was an employee instead of being an independent contractor."

There is no logical or decisive basis for that conclusion. The mere fact that Brower could have put Tollefson off the job without being liable for breach of contract, if Brower had attempted to exercise control of the details of Tollefson's performance and he had refused to obey, does not establish that he was an employee, instead of an independent contractor. In the absence of a contract binding the parties for a specified period or quantity, Brower would be no more liable for breach of contract, upon putting Tollefson off the job as an independent contractor, than he would be for discharging him as an employee. In either event, there would be no liability in that respect, and consequently, the existence of the mere right to put Tollefson off the job is of no significance.

The court also was of the opinion that the insurance policy, issued to Brower by the Standard Accident Insurance Company, afforded some proof that Tollefson was an employee of Brower. On that subject the court, after the statement above quoted, that "Tollefson then was an employee instead of being an independent contractor," added,—

"The parties so considered him,—at least, both parties intended Tollefson should be covered by the policy and the premium was based thereon. The parties themselves classified the risk. They inserted in typewriting, Item 8: 'The automobiles insured hereunder are not owned by the named assured and this policy shall not cover any automobiles owned in full or in part by the named assured.' Both Brower and the Insurance Company knew the policy was to cover the automobiles Brower hired to work on the job."

Although it is evident from the wording of "Item 8" (which is a typewritten insertion in the "Declarations" attached to the policy) that the policy was not to "cover any automobiles owned in full or in part by the named assured,"

it does not follow that by procuring the policy either Brower or his insurer assumed or admitted liability for damage inflicted by the negligent operation of all hired trucks,—including those operated by an independent contractor,—used in the performance of Brower's contract with the Sturgeon Bay Company. That provision does not purport to state or to define the nature or extent of the indemnity which Brower, as the "named assured," secured or intended to secure by that policy in respect to automobiles which are included under the description in "Item 8." The only right to indemnity which Brower had under the policy was that the insurer agreed to pay (within specified limits as to amounts) "the loss from the liability *imposed by law* upon the assured for damages on account of bodily injuries" or the destruction of property of others, as the result of accidents "by reason of the ownership, maintenance, or use of any automobile *described in . . . Declarations,*" which constituted part of the policy. Then, instead of inserting in the blank space left for that purpose in those *"Declarations,"* a description of the automobiles, there were inserted the words "See endorsement Form No. 44 attached." In that "Form No. 44," which is entitled "Hired Cars—Automatic Coverage," there is the following provision as to the indemnity secured by Brower under the policy, to wit:

"The policy to which this endorsement is attached is extended to cover the loss from the liability imposed by law upon the named assured for damages on account of bodily injuries, . . . sustained or alleged to have been sustained as the result of an accident occurring, during the effective period of this endorsement, by reason of the maintenance, operation, or use of any automobile, tractor, or trailer, of the type specified in said schedule and used for the purposes specified in said policy, hired by the named assured."

It is manifest that the indemnity secured by Brower under that provision is only for "loss from the liability imposed by

law upon the named assured for damages" sustained as the result of the maintenance, operation, or use of an automobile of the specified type "hired by the named assured," *i. e.,* Brower. That provision does not impose, and under or by virtue of it Brower, as the named assured, did not by any possible implication assume liability for damages sustained as the result of the maintenance, operation, or use of such hired automobiles, when no such liability is "imposed by law" upon him. There is nothing in the policy, including "Form No. 44," attached thereto, as to the nature of Brower's status or relationship in respect to such hired automobiles or the operator thereof; or because of which he can be deemed to be or to have intended to be liable for damages sustained as the result of the maintenance, operation, or use of such hired automobiles, although no such liability is otherwise "imposed by law" upon him. On the contrary, the meaning and effect of that provision in the policy is merely that when, by reason of the actual facts,—independent of the policy or any provision therein,—liability is "imposed by law" upon Brower by virtue of his status or relationship in respect to the hired automobile or the operator thereof, that then he is entitled to indemnity for his loss by reason of that liability. Consequently, the mere facts that he accepted, and the insurer issued the policy to him does not warrant the inference or conclusion that his status or relationship in respect to "automobiles hired by him" or to the operators thereof, was such that liability for negligence in the operation thereof was imposed upon him.

Neither is Tollefson's status as an independent contractor altered or affected by the facts that the premium on the policy was based in part on the amounts paid to him by Brower, or that the latter's contract with the Sturgeon Bay Company required him to carry insurance that would fully protect both of them in all cases against damages to the property and travelers on the highways. It begs the issue to contend that

because of those facts Tollefson should be considered an employee of Brower, even though the evidence is otherwise insufficient to establish that relationship. Even in the absence of any such relationship or consequent legal liability on the part of Brower or the Sturgeon Bay Company for any damages sustained in an accident with any truck hauling its stone, it was nevertheless certainly advisable and proper for them to arrange to be fully protected by insurance against possible loss by reason of not only such damages, but also the expense of investigating and defending claims therefor, which might be asserted against them regardless of the merits, validity, or ultimate disposition thereof; and likewise, in view of the possibility of having to investigate and defend against all such claims, the insurer was warranted in basing its premium on Brower's payments for the tonnage hauled on all hired automobiles, regardless of the legal relationship which in fact existed between him and the operators thereof.

It follows that Brower is not liable for the damages sustained by Pichette as the result of Tollefson's negligence; and that, therefore, the appellants were entitled to have the complaint dismissed as to them.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint against the defendants C. D. Brower and the Standard Accident Insurance Company.