**FLEEGER et al. v. AMES et al.**
No. 2238.

Circuit Court of Appeals, Tenth Circuit.
June 11, 1941.

804

Charles R. Fellows, of Tulsa, Okl., and Calvin Boxley, of Oklahoma City, Okl. (Embry, Johnson, Crowe & Tolbert, of Oklahoma City, Okl., on the brief), for appellants Jessie Olive Dunham and Reginald H. Dunham.

A. Francis Porta, of El Reno, Okl. (John M. Wheeler and John M. Wheeler, Jr., both of Tulsa, Okl., and Stanley E. Toland, of Iola, Kan., on the brief), for appellants Burtner Fleeger, L. W. Grant and A. Francis Porta, trustee.

Bradford J. Williams and G. C. Spillers, both of Tulsa, Okl. (Floyd L. Rheam, Rosco E. Harper, Fenelon Boesche, Chas. L. Yancey, Kavanaugh Bush, and Charles P. Gotwals, Jr., all of Tulsa, Okl., on the brief), for appellees Julia M. Boswell, et al.

Bailey E. Bell, of Tulsa, Okl., for appellees Effie L. Ames, Cornelia Fry and Fredericka Gerlach.

HUXMAN, Circuit Judge.

In 1929 and 1930 the Liberty Royalties Corporation undertook a refinancing operation through which it sought to retire its outstanding issue of preferred stock by inducing the holders thereof to exchange it for common stock of the corporation. The company was in state receivership from 1931 to 1938, when a petition was filed for reorganization un-

der Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Thereafter its affairs were administered in the bankruptcy court.

On November 27, 1938, the bankruptcy court directed the trustee to give notice to all claimants, requiring them to file proof of claims, and fixed the time for the filing thereof. The order required that verified proof be filed in support of claims.

The appellees herein originally were the holders of preferred stock of the corporation, which they had exchanged for common stock in the campaign of 1929 and 1930. Appellants, with the exception of Reginald H. Dunham and Olivia Dunham, were owners of preferred stock which was not exchanged for common stock in the campaign. Olivia Dunham was the owner of common stock purchased after appellees had exchanged their preferred for common stock. Pursuant to the court's order, appellees filed their verified claims, alleging that they had been induced to make the exchange through fraudulent representations, and asked that they be restored to their former status as owners of preferred stock. Appellants resisted the applications. The court heard the claims separately. Some of the appellees testified in person and others submitted affidavits in support of their claims. The court found that appellees had been defrauded through false and fraudulent representations which had induced them to exchange their preferred for common stock, and entered an order restoring them to their former position of preferred stockholders. The objecting owners of preferred stock and Reginald H. Dunham and Olivia Dunham have appealed.

■ It is urged by all the appellants that the evidence was insufficient to establish fraud. No useful purpose would be served by a detailed delineation of the evidence. With some variation, the oral proof and the statements in the affidavits established that in the campaign to secure the surrender of the preferred stock, the president of the corporation and some of its other officers and agents represented to the stockholders that it was to their interest to make the exchange; that the common stock would be placed on the market and would be worth $5 per share; that the exchange was necessary to effect certain changes in the corporate structure; that the entire issue of preferred stock would be retired and that the stock-holders would all be on the same footing. In some instances a statement was made that the person being solicited was the last one holding out and that all the others had surrendered their preferred stock. These representations were false. The president not only had refused to exchange his own preferred stock but had also acquired additional preferred stock surrendered by some of the appellees. The finding of fraud is amply sustained by the evidence.

■■ It is contended that a claim may not be established by ex parte affidavits and that therefore there is no competent evidence supporting the claim of such appellees who only submitted affidavits in support of their claims. Section 77B, subsection (c) (6) of the Bankruptcy Act, 11 U.S.C.A., § 207, sub. c(6), confers power upon the judge of the bankruptcy court to determine the manner in which claims and interests may be filed or evidenced and allowed. Here the judge directed the filing of verified claims and in some instances authorized the receipt of affidavits in support thereof. No evidence was offered by any of the appellants attempting to controvert the facts in the verified claims or in the affidavits in support thereof. The court inquired whether the trustee or the debtor desired to contest the truth of the statements in the affidavits. In substance, counsel for the trustees replied that they contented themselves with reliance upon the laches of appellees and estoppel by reason of acceptance of dividends by them on the common stock they had received in exchange for their preferred stock. Neither was any evidence offered by any of the other appellants or opportunity sought by them to controvert the statements in the affidavits. The filing of a proof of claim duly verified asserting a claim valid on its face is evidence which will support an allowance thereof even if objection has been made, unless the objection is supported by evidence. Remington on Bankruptcy, 4th ed., § 1044.50; In re Highway Const. Co. of Ohio, 6 Cir., 105 F.2d 863; Rasmussen v. Gresly, 8 Cir., 77 F.2d 252; Alexander v. Theleman, 10 Cir., 69 F.2d 610.

■ It is further urged that the claims of appellees are barred by laches. Section 101, Oklahoma Statutes 1931, 12 Okl.St. Ann. § 95, provides that an action for fraud shall be commenced within two

years after the cause of action shall have accrued. It further provides that the cause of action in such case shall not be deemed to have accrued until discovery of the fraud. These exchanges were made approximately ten years prior to the filing of the claims. Appellees testified positively that they did not learn of the facts with respect to the false and fraudulent statements and representations until shortly before they filed their claims. There is no testimony in the record showing that the facts regarding their discovery of the fraud is otherwise than as testified to.

But, it is urged that they could with diligence have discovered the true facts and that they are therefore estopped by their negligence. The corporation has had a checkered career. Its affairs have been manipulated and mismanaged, in many instances fraudulently and unfairly to the stockholders. It was in continuous receivership from July, 1931, until it came under the provisions of Section 77B of the Bankruptcy Act. Appellees were scattered throughout many walks of life. They were mostly small stockholders. A large number of them were women. The record strongly suggests that they had little or no knowledge of the intricacies of corporate structure and that their attention to the transactions was not challenged until after certain developments occurred in the course of the reorganization proceedings. It cannot be said as a matter of law that they were negligent in failing to discover the true situation before they did.

It is also asserted that some of the appellees are estopped because they accepted and retained dividends on the common stock they received in the exchange. It is established by the evidence that certain of the appellees did receive a dividend check about the time of the exchange. It does not clearly appear whether the checks were given as a dividend on the preferred stock or as a part of the exchange or as a dividend on the common stock. However, it stands undisputed that at the time they received the dividend they had no knowledge of the fraud which had been practiced upon them. Furthermore, the order of restoration expressly provided: "That the stock claims of the above named stockholders who are hereby restored to a preferred status shall be and the same are hereby subjected to offsets being made and charged against them any and all sums received by them in connection with the exchange of such stock, as well as the dividends which they received while occupying the position of common stockholders over and above the dividends which they would have received had they remained at all times preferred stockholders, * * *"

Reginald H. Dunham and Jessie Olive Dunham advance an additional reason why appellees are estopped as to them. The trustee testified that 2,184 shares of common stock were issued to Jessie Olive Dunham on August 15, 1930, and that on the same day 4,555 shares were issued to Alletha E. Dunham. This was after appellees had surrendered their preferred stock. Appellants Dunham contend that the appellees had voluntarily surrendered their preferred stock in the corporation, permitted the same to be canceled, and that appellants are bona fide purchasers for value without notice of their rights, and as such are favorites of both law and equity. They contend that if restoration be made, it should be subject to their rights by means of stock classification. They seek to sustain their position on the equitable principle that one who institutes suit against another must be prepared to show a prior or superior equity in himself, and upon the further principle that one who clothes another with the apparent ownership of personal property is estopped to deny that ownership as against an innocent party who has altered his position. They omit a very material part of the last equitable maxim, which is that one who has altered his position must have done so in reliance upon the then status of the property. There is no evidence in the record that appellants Dunham knew or relied upon the then status of the corporation at the time they purchased their common stock or that they knew whether the corporation had any outstanding preferred stock, or if so, how much. Furthermore, there is no showing that Reginald H. Dunham owned any stock. He therefore was not in a position to assert any rights whatever against appellees. As to Jessie Olive Dunham, the record fails to show that she filed any pleading in opposition to appellees or objected to the order of the court restoring appellees to their former status. Her name first appears on the notice of appeal. Appellants Dunham cannot assert rights against appellees which remaining appellants may not assert.

Affirmed.