THURN, Plaintiff, vs. LA CROSSE LIQUOR COMPANY and others, Defendants. [Two appeals.]*

*January 11—February 6, 1951.*

---

* Motion for rehearing denied, with $25 costs, on April 3, 1951.

For the plaintiff there were briefs by *Dennis B. Danielson* of Eau Claire, and *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Mr. Quincy H. Hale* and *Mr. Danielson.*

For the defendants La Crosse Liquor Company and Hartford Accident & Indemnity Company there was a brief by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *W. L. Jackman.*

For the defendant New York Casualty Company there were briefs by *Johns, Roraff, Coleman & Pappas* of La Crosse, and oral argument by *Peter Pappas.*

*Carl Neprud Otjen* of Milwaukee, for the impleaded defendant Liberty Mutual Insurance Company.

HUGHES, J. The plaintiff testified that the highway was icy and that he observed Martindale approaching from the opposite direction at a high rate of speed; that he pulled his car onto the shoulder of the road and had virtually stopped when the accident occurred; that the Martindale car went into a skid and struck plaintiff's car with great force, causing serious injury to plaintiff. This was sufficient to warrant the jury in finding that Martindale was negligent

with respect to speed and control. The police officer who was called to the scene of the accident testified that he observed that cars which crossed this icy stretch at slow speeds had a greater tendency to skid than cars which traveled forty miles per hour. Defendant advances a theory that such testimony refutes that of plaintiff. At best, it presented a jury issue and gives no cause to disturb the jury finding upon Martindale's negligence. It certainly does not render plaintiff's testimony incredible.

Appellant Thurn contends that the issue as to whether Martindale was an employee of the La Crosse Liquor Company was a question of fact and that the trial court erred in changing the jury's answer to question 3 of the special verdict pertaining to control.

This question was submitted in unusual form, but all parties seem to be satisfied that it properly presented the question of whether Martindale was an employee of La Crosse Liquor Company at the time of the accident. Since its form was more favorable to La Crosse Liquor Company than to plaintiff, no one appears injured.

The trial court concluded that the facts concerning the relationship between the company and Martindale were not in dispute and that they clearly establish that Martindale was an independent contractor.

The test used in determining the question of whether one is an employee or an independent contractor is well defined:

". . . the most significant indicium of an independent contractor is his right to control the details of the work. The principal test to be applied in determining whether one rendering services for another is an employee or an independent contractor is whether the employer has the right to control the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the work, the time of the employment, the method of payment, and the right of summary discharge of employees." *Kolman v. Industrial Comm.* (1935), 219 Wis. 139, 141,

262 N. W. 622. See also *Employers Mut. Liability Ins. Co. v. Brower* (1937), 224 Wis. 485, 490, 272 N. W. 359.

"Where the inference is clear that there is, or is not, a master and servant relationship, it is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered." Restatement, 1 Agency, p. 484, sec. 220.

In the instant case the salesman was dead at the time of trial and the nature of his relationship to the company had to be determined from the testimony of the general manager of the La Crosse Liquor Company, as amplified by the testimony of another salesman covering his own relationship.

The manager, Czeskleba, testified that the company reserved no right to control the activities of Martindale and that when it gave him a territory to cover he was free to do so in whatever manner he saw fit, receiving commissions on sales made. He also testified that Martindale and the other salesmen attended sales meetings on Monday mornings to learn about the new price lists and the goods that were to be pushed during the following week, and that Martindale was free to attend those or not as he saw fit. He usually did attend. These circumstances, standing alone, would establish the relationship of independent contractor. *Henry Haertel Service, Inc., v. Industrial Comm.* (1933), 211 Wis. 455, 248 N. W. 430; *Kruse v. Weigand* (1931), 204 Wis. 195, 235 N. W. 426; *James v. Tobin-Sutton Co.* (1923), 182 Wis. 36, 195 N. W. 848.

There was other testimony of Czeskleba, however, which might well lead to the opposite conclusion. He testified that Martindale came to him looking for a "job" and that he "hired" him as a salesman.

Martindale called on the trade in a certain area. If orders were phoned to the company from his area Martindale was credited with the sales.

If there was someone in the territory whose credit was not good, the company would not let him take an order except on C.O.D.

He was permitted to collect accounts and issue receipts in the company's name.

Czeskleba further testified that, "the salesmen in our outfit have a great deal of leeway in price fixing, in the event that they can further their sales and build a volume sale out of what we call a limited sale, by discounting, they are to use their own discretion in the amount of discount that they give, but there are limitations." Czeskleba fixed those limitations.

While Czeskleba testified that there was no fixed quota of sales for Martindale to meet, he also testified that if his sales fell down for a month he called that to his attention.

He also testified that after the accident Martindale reported to him and told him that he had a headache and did not think he would make any more calls that day.

Robinson, a salesman who worked under an arrangement similar to Martindale's, testified that in his area the trucks made delivery of orders taken by him on established routes on certain days of each week and that he was expected to call on those customers a couple of days ahead of the truck so that orders taken by him could be delivered.

We conclude that on the entire record in this case the inferences were properly for the jury.

In *Crossett v. Goelzer* (1922), 177 Wis. 455, 469, 188 N. W. 627, where the question was whether the son had taken his father's car for his own amusement or for the benefit of the father, the court said:

"While the facts are practically undisputed, it cannot be said that the inferences to be drawn therefrom are so plain that the minds of reasonable men cannot come to different conclusions in regard to them."

The court there held it to be a question for a jury.

With reference to the testimony of Czeskleba that the company reserved no right to control the activities of its salesmen, the statement of this court in *Drakenberg v. Knight* (1922), 178 Wis. 386, 392, 190 N. W. 119, is pertinent:

"It is true that it was necessary for the plaintiff to establish that the injury occurred in the scope of *Hale's* employment and that the car was then used with *Knight's* consent. The jury were not bound to accept as conclusive the denials of authority by the interested parties, qualified as they were by their other testimony, and we cannot say as a matter of law that there was not credible evidence to meet both of the conditions of liability."

Counsel for respondents and the trial court place great weight upon *State ex rel. J. A. Sexauer Mfg. Co. v. Grimm* (1935), 217 Wis. 422, 259 N. W. 262; *Kassela v. Hoseth* (1935), 217 Wis. 115, 258 N. W. 340; and *Employers Mut. Liability Ins. Co. v. Brower, supra.*

In the latter two cases the determination of the relationship rested upon the interpretation of written contracts, and no question was submitted to the jury.

In the *Sexauer Case* the question presented was whether substitute service upon the secretary of state was binding upon a foreign corporation which depended upon whether one France was an agent of the company. The corporation appeared specially and contended that its written contract with France disclosed the relationship of independent contractor. The trial court refused to dismiss the action. The corporation then sought a writ of prohibition to prevent the trial court from continuing the case. After examining the relationship by which France took orders for plumbing supplies manufactured by relator, this court concluded that France was not the agent of the manufacturer but an independent contractor. The court said (p. 425):

"The facts of this case make a clearer case of an independent contractor than those in the case of *Kassela v. Hoseth,*

ante, p. 115, 258 N. W. 340. Under that case and the authorities cited in the opinion therein we hold that France was not an agent of the relator in respect to the operation of his automobile, but an independent contractor, if he can be considered as a 'contractor' in any sense in that regard. The term 'independent contractor' is perhaps a misnomer as so applied. It would be more exact to say that no contractual relations whatever existed between France and the relator as to the operation of the automobile. Whether France was a 'contractor' or not, his operation of the automobile was entirely 'independent' of the relator, and, this being so, the relator is not responsible for his conduct in operating it. As counsel have treated the matter as if France operated his automobile either as an agent of the relator or as an independent contractor, we have treated the question from the same viewpoint, regardless of whether the point of view is correctly taken."

The trial court apparently relied upon this language and was confused thereby. The language is confusing and cannot be considered authority upon the question of employer-employee or independent-contractor relationship.

Since the evidence supports the inference drawn by the jury, the answer of the jury must be reinstated and judgment rendered upon the verdict.

*By the Court.*—That portion of the judgment appealed from by the New York Casualty Company is affirmed. That portion of the judgment appealed from by the plaintiff is reversed and cause remanded with directions to enter judgment in accordance with the opinion.

FAIRCHILD, J. (*dissenting in part*). I am dissenting from that portion of the decision which holds that there was a jury question as to the nature of the contract, that is, as to the intent of the parties. The evidence, which is without dispute, was given by the manager of the La Crosse Liquor Company who made the contract with Martindale and is corroborated by one other witness who had a similar contract and acted

as an independent contractor. It appears from the testimony of the manager that upon the application of Martindale to act as salesman "we decided we would give him an opportunity to act as salesman for us." He came to us "because he was formerly connected with the distillery business and thought he had had enough experience to warrant . . . a chance to prove himself as a salesman." It was "a straight commission job; he was to be reimbursed for what he could produce in the line of selling and taking orders for this merchandise." Upon being asked whether Mr. Martindale had to have a state permit, the manager said, "Yes. . . . On new employees or people acting as salesmen for us, if they are financially embarrassed to start, we sometimes finance that, a ten-dollar fee the state charges, and if they are financially able they pay for it themselves; it's their own obligation to pay."

"*Q.* If you purchase it yourself does the salesman later reimburse you? *A.* Yes.

"*Q.* You don't know what you did with reference to that in this specific case? *A.* . . . I don't remember whether he had his license fee at that time or not; . . . it would have been a matter that would have been straightened out at a later date; it is the salesman's obligation. . . . He was paid a commission and was definitely interested in getting those orders out as fast as he could. His obligation to us was to definitely create a volume in monthly sales every month so that he was deriving enough volume so it was profitable to him as well as us. . . . He was expected to further his business. . . .

"*Q.* But if he had no such excuse as that you would have discharged him? *A.* If it's largely neglect he would have been discharged.

"*Q.* You reserved the right to do that? *A.* Yes. . . . If he wasn't salesman enough to create enough volume to make a living, it was a matter for us to either give him more opportunities, . . . or let him decide what he wanted to do. . . .

"*Q*. And if he wasn't producing in sufficient volume to satisfy you, you reserved the right to discharge? *A*. Yes.

"*Q*. That's part of your original hiring agreement? *A*. Yes.

"*Q*. Was there any quota fixed for him to meet per week or per month? *A*. No, sir.

"*Q*. In other words, that was left entirely to your discretion? . . . You and your superiors? *A*. That's right."

The evidence is that both parties were interested in "volume."

There was an agreement entered into between Martindale and the La Crosse Liquor Company. Under the evidence in the record, some of which has already been referred to, can it be said that there is contained in the express agreement terms under which Martindale could not assume to act on his own as an independent contractor? The trial court in construing the contract reached the conclusion that he was an independent contractor. In judging the testimony, I am convinced that he was correct in so holding. There are no circumstances here which compel reading into the arrangement that Martindale entered into the relation of master and servant. One construction would be for services of and by an independent contractor. If the other is to be accepted, he would be within the employer-employee relationship.

We are dealing with an oral contract. It does not differ in its effectiveness from a written contract. It likewise gathers its force from the mutual assent of the parties to the terms and conditions. ". . . it is not only necessary to interpret those terms for the purpose of ascertaining the intention of the parties in entering into the agreement, but also so to construe them as to give legal effect and operation to such intention. The importance of a reasonable and just construction of every instrument or contract is quite evident and certain. So, too, it is equally important that the rules of construction should be regulated by law, and be governed by

distinct, settled, principles, so that there may be uniformity and certainty in their application." 1 Wait, Actions and Defenses (1877), p. 114, sec. 1. *Goldstein v. D'Arcy* (1909), 201 Mass. 312, 87 N. E. 584. By overlooking this well-established rule a decision by a jury may result in imposing obligations not warranted by the express agreement of the actual parties. See Anno. 65 A. L. R. 648. If there were any dispute as to the terms of the contract, that dispute as to the questioned "term" would be one of fact, to be tried by a jury. But when the terms of the contract are settled and the plans and purposes of the contracting parties are agreed upon by the parties, the construction is then for the court.

Much that is said in the opinion of the majority is argument overlooking, it seems to me, the rule controlling construction of contracts. It is true the courts have recognized the difficulty of drawing the distinction between contracts which create independent contractors and those creating the relationship of employers and employees. There have been many attempts at stating a rule, and the generally accepted one is that an independent contractor is one who renders service and represents the will of his employer only as to the result of his work and not as to the means whereby it is accomplished. This has resulted in describing a test by which to determine whether a person is to be classified as a servant or an independent contractor. "The most important test is . . . the control over the work which is reserved by the employer. . . . It is not, however, the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor." 27 Am. Jur., Independent Contractors, p. 486, sec. 6.

The engagement of Martindale to work for the La Crosse Liquor Company required him to perform certain services in the interest of that company. The contract is the important

factor. Does the setup or general pattern stipulate or place sufficient control over Martindale's methods and plans as to subject him to the orders of the company as a matter of right in respect to the details of his work so as to place him in the category of servant as distinguished from an independent contractor? In other words, we are to inquire as to what was agreed to by the parties in order to determine upon the existence of an actual relationship.

Under a commission method of compensation of a salesman, the character of the contract depends upon the reservation of the right of supervision in the employer, the nature of the work, the service calls, and the duties with regard to collections, as well as to respond on demand to orders of an employer. The fact that one is working on a commission, owns his own car, and pays his own expenses may be of importance. The agreement must be given full consideration, for as said in the cases where this difficult question has arisen, each case must stand on its own facts. The rule or test for distinguishing between the two classifications has been phrased differently by different writers. An acceptable statement is found in *Neitzke v. Industrial Comm.* (1932), 208 Wis. 301, 303, 242 N. W. 163: "The relation of employer and employee exists where one, performing work for another, does so under a contract express or implied, which compels the one performing to do work under the control of the employer and at the same time gives to the employer the right to direct the other's conduct, to dismiss him from the service, and to have at all times authoritative control over the work." Instances have arisen where the differences between an independent-contractor and the employer-employee relationship are so definite that no question as to the character of the employment is raised. The two kinds of employment do exist, are recognized in the law; and neither one, so far as the courts are concerned, is to be favored over the other.

The court, when the facts are undisputed, must determine into which classification the contract, express or implied, falls.

The learned trial judge, in dealing with the problem in the case at bar, particularly as to whether Martindale was an employee of the La Crosse Liquor Company or an independent contractor, found a standard in *Kassela v. Hoseth* (1935), 217 Wis. 115, 258 N. W. 340. The general doctrine to which he adhered is supported by the decision in *Employers Mut. Liability Ins. Co. v. Brower* (1937), 224 Wis. 485, 272 N. W. 359, where the question is also considered. In his memorandum decision, the trial judge said: "In the case at bar all the La Crosse Liquor Company wanted was volume of orders. Naturally, the relationship could be terminated for violation of law on the part of the one selling the company's products so as to implicate the company with the state or federal government. That would be true in almost any similar contractual relationship. Likewise, either party could conclude the relationship at will unless it was for a definite time or for a definite quantity of work. . . . While the relationship may have been at will, while it lasted it was a relationship of independent contractor and the fact that it could be terminated at any time under the authorities would not defeat the relationship. It seems to the court without any question that the Martindale-La Crosse Liquor Company relationship had all the required incidents of an independent contractor and not that of employer and employee."

The evidence warrants the conclusion reached by the trial court, which is to the effect that the contract, although designating a territory in which Martindale was to engage his efforts, still allows him to work according to his own methods in an automobile owned and maintained by him, but being subject to control of employer only as to result of work. This places him in the classification of independent contractor.

The claim is not borne out by any testimony that the La Crosse Liquor Company had any right to direct when or how the Martindale automobile should be run or managed. The evidence is that while working on commission basis he operated his car at his own expense and on his own time; that he was free from direction and control by the employer as to where, inside of the designated territory, when, or in what manner he was to drive or sell the employer's merchandise. He was, of course, required to report and remit for sales and collections, but the employer was interested and concerned only with the volume of orders secured by the salesman. All this is consistent with the character of an independent-contractor relationship. The acts of the employer in the way of suggesting help or means by which the salesman could increase his volume of sales do not indicate compulsion or show a reserved right of control, but rather show a desire to co-operate with the salesman, this desire prompted by an expectation of mutual benefit. In this effort an employer may exercise limited control over work without rendering employee a mere servant, but control which will have that effect is control not only of result of work but also means and manner of performance thereof, and where employee represents will of employer as to result of work but not as to means or manner of accomplishment, he is an independent contractor. *Merritt v. E. L. Bruce Co.* (La. App. 1936), 166 So. 195.

As to the other questions involved, we agree with the trial court that a jury question exists as to the negligence of Martindale being the cause of the accident, and we are of the opinion that the ruling with relation to the admission of evidence that the La Crosse Liquor Company carried workmen's compensation insurance protecting it against injury to any of its employees was not error. *Employers Mut. Liability Ins. Co., supra.*

From an examination of the record I am of the opinion that the trial court disposed of the matter in accordance with the rules of law both as to the liability arising under the contract between Martindale and the La Crosse Liquor Company and with respect to the admission and rejection of evidence.

I am authorized to state that Mr. Chief Justice FRITZ and Mr. Justice BROWN concur in this dissent.

* Motion for rehearing denied, with $25 costs, on April 3, 1951.