In the Matter of DAHLMAN TRUCK LINES, INC., Debtor.

Bankruptcy No. MM7–83–01543.

United States Bankruptcy Court, W.D. Wisconsin.

March 31, 1986.

William J. Rameker, Murphy & Desmond, S.C., Madison, Wis., trustee.

Kenneth J. Doran, Smoler, Albert & Rostad, Madison, Wis., for debtor.

Richard C. Kelly, Mealy & Kelly, Whitewater, Wis., for Kowalski Trucking, Inc.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

This objection to a claim has been considered on briefs at the request of the parties. The following facts appear to be uncontested.

On January 1, 1983, the debtor, Dahlman Truck Lines, Inc. ("Dahlman") and the claimant, Kowalski Trucking, Inc. ("Kowalski") signed an agreement whereby Kowalski was to provide trucking service to Dahlman. On September 26, 1983, Dahlman filed a petition for relief under chapter 7 of

the Bankruptcy Code. On December 1, 1983, Kowalski filed a proof of claim for $33,462.75 claiming $24,134.44 as a section 507(a)(3) wage priority claim, and the remaining $9,328.31 as a general unsecured claim.

The trustee filed an objection to Kowalski's claim on June 3, 1985. In a brief filed with this court, the trustee has listed two grounds on which his objection is based. First, $24,134.44 is not due under the terms of the contract. Second, that the $24,134.44, if owed, is not entitled to priority as a wage claim under section 507(a)(3).

## I.

■ Under section 502(a) of the Code, a claim which is filed "is deemed allowed, unless a party in interest ... objects."[1] This section has been uniformly interpreted to mean that a proof of claim is accorded prima facie validity. *In Re Record Club of America, Inc.*, 18 B.R. 456 (Bankr.M.D.Pa. 1982). According to *Record Club of America:*

> [the claimant's] proof of claim constitutes prima facie evidence of its claim, thus requiring the bankrupt to come forward with sufficient evidence to refute [the] ... claim thereby shifting the evidential burden to [the claimant].

*Id.* at 458.

■ While the ultimate burden remains at all times on the claimant a formal objection to a claim unsupported by proof will not overturn a sworn proof of claim, *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); *Alexander v. Theleman*, 69 F.2d 610, 611 (10th Cir.1934). This concept was explained in *Fleeger v. Ames*, 120 F.2d 803 (10th Cir.1941):

The filing of a proof of claim duly verified asserting a claim valid on its face is evidence which will support an allowance thereof even if objection has been made, unless the objection is supported by evidence.

*Id.* at 805.

■ Kowalski has met its burden in establishing its claim. The trustee has not alleged any fact or offered any evidence which would prove that Kowalski's claim is without merit.[2] Kowalski's proof of claim in the amount of $33,462.75 is based on the contract between Dahlman and Kowalski.[3] Priority is sought only for the $24,134.44 in wages which Kowalski paid its employees to perform under the contract. No evidence has been offered to support the trustee's objection to the amount claimed and, therefore, under *Fleeger* and *Alexander*, discussed above, Kowalski's claim must be allowed.

## II.

Since Kowalski has a valid claim against Dahlman, it is necessary to determine whether $24,134.44 of that claim is entitled to priority under section 507(a)(3). Kowalski argues that an employer-employee relationship existed between Kowalski and Dahlman. Thus, Kowalski argues that the money which Dahlman owed to Kowalski under their agreement constituted "wages" entitled to priority under section 507(a)(3).

It is not necessary to determine whether Kowalski itself was an employee of Dahlman since Kowalski, as a corporation, cannot claim a wage priority under 11 U.S.C. 507(a)(3). Section 507(a)(3) makes clear that corporations are not entitled to the priority provided by that section:

1. 11 U.S.C. § 502(a) provides:
   A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor is a case under chapter 7 of this title, objects.

2. The trustee was given the opportunity to but did not request a trial and introduce evidence on this matter.

3. In its proof of claim Kowalski states: "[t]he amount set forth on the billing is the total gross amount due and payable to Kowalski Trucking for providing trucking services on behalf of the debtor pursuant to the agreement dated July 1, 1983 and attached hereto." This makes clear that Kowalski's claim is actually based on contract amounts owing and not on wages paid employees.

(a) The following expenses and claims have priority in the following order:
    ....
(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—
(A) earned by an *individual* within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first....

11 U.S.C. 507(a)(3)(A) (emphasis added). *See also* 3 *Collier on Bankruptcy* ¶ 507.-04[3][f] (15th ed. 1985) at 507–31.

■ However, Kowalski might be entitled to a section 507(a)(3) priority if it could demonstrate that its employees were actually employed by Dahlman. It is well established that an assignee of wages is entitled to priority under section 507(a)(3). *In Re Allen Carpet Shops, Inc.*, 27 B.R. 354, 357 (Bankr.E.D.N.Y.1983) citing *Shropshire, Woodliff, & Co. v. Bush*, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436 (1907); *In Re Stultz Bros.*, 226 F. 989 (S.D.N.Y.1915); *In Re Missionary Baptist Foundation of America, Inc.*, 12 B.R. 570 (Bankr.N.D. Tex.1981), *affirmed* 667 F.2d 1244 (5th Cir. 1982). Therefore, if Kowalski's employees were actually employees of Dahlman, and if the $24,134.44 owed to Kowalski represents a bona fide wage assignment by the employees to Kowalski, then Kowalski's claim is entitled to section 507(a)(3) priority.

Reference must be made to Wisconsin law to determine whether Kowalski's employees were actually employees of Dahlman. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Wisconsin law the degree and quality of control which one party has over another determines whether an employer-employee relationship exists. *Thurn v. La Crosse Liquor Company*, 258 Wis. 448, 46 N.W.2d 212 (1951). The single most important factor is whether the employer has retained the right to control the

details of the work. *See Mueller v. Luther*, 31 Wis.2d 220, 225–26, 142 N.W.2d 848 (1966) and cases cited therein; *Bond v. Harrel*, 13 Wis.2d 369, 374, 108 N.W.2d 552 (1961) and cases cited therein.

In *Thurn*, the court restated the established test for determining whether an employer-employee relationship exists:

The principal test to be applied in determining whether one rendering services for another is an employee ... is whether the employer has the right to control the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the work, the time of the employment, the method of payment, and the right of summary discharge of employees.

*Id.*, 258 Wis. at 451, 46 N.W.2d at 214, *quoting Kolman v. Industrial Commission*, 219 Wis. 139, 141, 262 N.W. 622, 623 (1935). *See also Weber v. City of Hurley*, 13 Wis.2d 560, 568, 109 N.W.2d 65 (1961).

■ Neither party requested an evidentiary hearing in this matter. Thus the only evidence available is the agreement between Kowalski and Dahlman.[4] There is little, if anything, in the agreement which could be construed as establishing an employer-employee relationship between Dahlman and Kowalski and even less establishing that relationship between Dahlman and Kowalski's employees. *See Mueller v. Luther, supra*, 31 Wis.2d at 228, 142 N.W.2d 848. Nothing in the agreement even suggests that Kowalski's employees were employees of Dahlman. In fact, the agreement establishes quite the contrary. Paragraph 14 of the agreement provides that:

The parties intend to create by this agreement the relationship of carrier and independent contractor and not an employer-employee relationship. Neither the contractor (Kowalski) nor contractor's employees are to be considered employees of the carrier (Dahlman) at any time under any circumstances or for any purpose.

---

**4.** The agreement referred to above was submitted with Kowalski's brief to the court. In the absence of objection by the trustee and the failure of the parties to request a hearing it is appropriate to treat the facts contained therein as stipulated to by the parties.

While this provision is not controlling, *Bond v. Harrel, supra,* 13 Wis.2d at 375, 108 N.W.2d 552, it is relevant to the determination here. *See Mueller v. Luther, supra,* 31 Wis.2d at 224–25, 142 N.W.2d 848. Kowalski has alleged other facts which tend to rebut the clear intention expressed in the agreement,[5] but they are not sufficient in and of themselves, to establish the claimed relationship. Since Kowalski bears the ultimate burden of establishing a priority under section 507(a)(3), *see Missionary Baptist Foundation, supra* 12 B.R. at 571; *In Re Marshall E. Smith & Bro. Inc.,* 35 F.Supp. 56, 57 (1940), and since the facts alleged on this issue are insufficient, the court must decline to find an employer-employee relationship between Dahlman and Kowalski's employees.

 Even if Kowalski had established that its employees were actually employees of Dahlman, the result would not change. Only an assignee of wages is entitled to a section 507(a)(3) priority. *Allen Carpet Shops, supra.* A holder of a subrogation claim, or a mere lender of monies from which wages are paid, is not entitled to a section 507(a)(3) priority. In *Allen,* the debtor maintained a checking account with the plaintiff bank. Prior to filing its petition, the debtor deposited a check in the amount of $24,000.00 at the bank. The bank accidently credited the debtor's account in the amount of $240,000.00 rather than $24,000.00. The bank thereafter honored and paid a series of the debtor's wage checks which caused an overdraft of which the bank was not aware until it discovered the deposit error. The court held that the bank's action constituted a mere loan and not a wage assignment:

> The affidavits submitted ... do not show that there was an intentional assignment of the employees' wage claims; rather,

they demonstrate that the bank's cashing of wage checks constituted an overdraft or loan to the debtor.

*Id.,* 27 B.R. at 358. In this case there is no suggestion that the employees executed wage assignments in Kowalski's favor. Nor would Kowalski fare better if, in the absence of an assignment, it were deemed to be a subrogee by virtue of having paid wages to the employees.[6] *In Re Missionary Baptist Foundation, supra.*

Thus, Kowalski Trucking, Inc.'s claim to priority must be denied.

---

**5.** Kowalski alleges that: 1) Dahlman had "exclusive" control over the hiring and firing of drivers, 2) Kowalski worked solely for Dahlman, 3) Dahlman held all license plate permits, 4) Dahlman trained the drivers, 5) Dahlman daily instructed the drivers where to pick up their loads, 6) Dahlman provided workmen's compensation insurance, and 7) Dahlman's logo was on all trucks.

**6.** 11 U.S.C. § 507(d) provides:

> An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.