KLAS, Plaintiff and Respondent, vs. FENSKE and another, Defendants and Respondents: GEHRUNG and another, Defendants and Appellants.*

*March 14—April 12, 1946.*

* Motion for rehearing denied, with $25 costs, on June 4, 1946.

*John L. Schlatterer* of Milwaukee, for the appellants.

For the respondent John C. Klas there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *D. V. W. Beckwith.*

For the respondents Arthur Fenske and Farmers Mutual Automobile Insurance Company there was a brief by *Reilly & Cosgrove* of Fond du Lac, and oral argument by *Frank W. Cosgrove.*

Rosenberry, C. J.    The facts in this case can be best understood by reference to a map, Exhibit 1, printed herewith.

The accident occurred on March 6, 1944, about 10 o'clock a. m., at the intersection of County Trunk Highways X and O,

in Green Lake county, County Trunk O, a gravel road twenty feet in width, running north and south. County Trunk X is a black-top arterial highway running east and west and is practically level. There is a sharp decline on County Trunk O from north to south as one approaches the intersection.

On the morning of the day in question, the plaintiff drove from his home to Randolph for the purpose of looking at the Williams farm near Randolph with the defendant Gehrung. On arriving at Randolph, Klas suggested that the trip be made in his car. Gehrung requested that they ride in the defendant Gehrung's car because he, Gehrung, was more comfortable in his car. It appears that he was a very large man and he had had the front seat set back three inches to accommodate him.

They drove from Randolph in Gehrung's car north to County Trunk X and then west to the Williams farm where they remained for a short time and then started the return trip to Randolph, the defendant Gehrung driving, the plaintiff Klas seated on the right side of the front seat. About the time they started back, a wet, heavy snow started falling. The intersection in question is about two and one-half miles east from the Williams farm. While the Gehrung car was approaching the intersection from the west, the Fenske car was coming toward it from the north.

All the direct evidence in the record relating to the manner in which Gehrung operated his car comes from Gehrung, a witness, Erma Pollock, a woman forty-four years of age, who saw both the Fenske car and the Gehrung car before they collided. Emil Pollock, father of Erma, who was washing his hands, was called to the window by his daughter, but when he reached a point where he could view the scene of the accident, the accident was over.

No claim is made upon this appeal that Fenske was not negligent in all the respects found by the jury. On the other hand, the plaintiff and Gehrung contend that there is no evidence to sustain the finding of negligence as to Gehrung. All the parties concerned were familiar with the intersection. Gehrung testified that as they left the Williams farm the wet snow which had fallen was packed on the road. The blacktop was slippery, he drove from the Williams farm at a speed of from twenty-five to thirty miles per hour; he knew that as he approached the intersection he was traveling on an arterial highway and that the stop sign north of County Trunk X was approximately ninety feet north of the intersection; as he approached the intersection, he testified he reduced his speed to around fifteen to twenty miles an hour, until at a point when he was one hundred eighty to two hundred feet from the intersection and could see up the road; there was no car between the mailbox and the intersection.

The mailbox referred to was one hundred fifty feet north of the center of County Trunk X. He further testified that he went ahead a distance of seventy-five feet or so and saw the defendant Fenske's car near the mailbox, about one hundred fifty feet north of the intersection. He estimated his distance from the intersection then around one hundred feet. Thinking that the Fenske car would stop at the stop sign, he continued on for a short distance and then saw that the Fenske car was not going to stop at the stop sign. Gehrung then turned his car to the right and tried to increase his speed because he was afraid that he could not stop on the slippery pavement in time to avoid an accident. He estimates that he was about sixty feet west of the intersection when he determined that the Fenske car was not going to stop. He then guided his car entirely off and to the south of County Trunk X and at the time his car was struck by the Fenske car, his rear wheels were on the east edge of County Trunk O and the rest of his car was in the grassplot in the southeast quarter of the intersection about three feet south of County Trunk X. His car was struck on the rear of the left side, the rear wheels and just back of the door. At the time of the accident Gehrung estimates his speed at twenty to twenty-five miles an hour. Fenske testified that he did not see the Gehrung car until just an instant before the collision when it was about sixteen feet away.

There is some dispute as to the facts after the happening of the accident. Gehrung testified that following the impact his car spun around three times in the road, and on the second turn the door sprung open on the right side and Mr. Klas fell out; that the rear wheels then struck Klas and he ended up in the ditch on the southeast corner of the intersection. It is undisputed that Klas was thrown out and the rear wheel of the car struck him. The Gehrung car went through the ditch and went up the bank at the southeast corner of the intersection, about two or two and one-half feet high, backwards, and

ended up in the field just off the road, facing northwest. The Fenske car stopped about twenty-five feet south of the Gehrung car in the ditch on the east or southeast side of County Trunk O.

We will take up the questions for decision in substantially the same order that they were considered by the trial court. The questions are : ( 1 ) Were the plaintiff Klas and the defendant Gehrung engaged in a joint enterprise? (2) Was the defendant Gehrung guilty of actionable negligence? (3) Was the negligence of the defendant Gehrung, if any, imputable to the plaintiff? (4) Was the court in error in directing judgment in favor of the defendant Fenske against the defendant Gehrung for contribution? (5) Assuming that Gehrung was negligent, was judgment for thirty per cent of the damages and costs correct? In the consideration of these questions additional facts will be stated.

(1) Joint enterprise. It appears that four or five years before the accident Gehrung desired to become a real-estate operator. To do so he had to have a license either as a broker or salesman. He applied to Klas to get a license as salesman under Klas. Klas gave him this permission. The license was procured. Gehrung ran his own business and did not operate as a salesman or employee under Klas. They were associated only in single transactions. If Gehrung had a buyer Klas might have suitable property for sale. On the occasion in question Gehrung had an option on the Williams farm. He approached Klas with the idea of having Klas purchase it. If Klas decided to purchase it, then Gehrung wished to resell it for Klas, and if a profit was made, to get one half of the profit as his commission. If there was no profit there was no commission. If there was a loss Klas assumed it. It is considered that this relationship did not amount to a joint enterprise. The Restatement of 2 Torts, p. 1273, sec. 491, is as follows :

"Any one of several persons engaged in an enterprise is barred from recovery against a negligent. defendant by the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to third persons injured by the negligence of a fellow member."

This case is controlled by the case of *Brabazon v. Joannes Brothers Co.* (1939) 231 Wis. 426, 286 N. W. 21. In that case it was contended that a broker who had the sale of a certain compound which was being demonstrated in the store of an intending purchaser, with the view to a sale were not engaged in a joint enterprise, the court said (p. 437) :

"Although each of the parties, including Dicker [demonstrator], was to profit in his own way to some extent by reason of increased sales of the difuso, they were not to share or participate in any common or joint profit. There was no contractual relationship or obligation between them in relation to the conduct of the sales campaign and the expense incurred thereby. Their respective duties and responsibilities, as well as their respective returns or profits, were several. As each was acting on his own accord, without any obligation or responsibility to the other, and there was no joint or common duty or financial interest involved, or any thing in the nature of a mutual agency or partnership between them, the relation of joint adventurers did not exist."

In this case, there was no contractual relation between Klas and Gehrung. If Gehrung found a piece of property which he thought Klas might purchase, whether the property should be purchased depended upon Klas' decision. If Klas purchased the property he furnished the entire purchase price and was the owner of the property. If Gehrung thereafter found a purchaser at a price suitable to Klas and made a sale, Gehrung received one half of the profit as his compensation or commission. Klas was under no obligation to sell, Gehrung was under no obligation to find a purchaser. Gehrung had no authority to bind Klas either with respect to

the purchase or the sale. While the profit if a transaction was closed determined the amount of Gehrung's commission, there was no agreement to share the losses. Each transaction stood upon its own basis and neither party to it had any authority to bind or control the conduct of the other. If Gehrung found a tract of land which he thought suitable and Klas refused to buy it, there was no breach of contract. If Gehrung found a purchaser and Klas refused to sell, there was no breach of contract. It is held generally that—

Joint enterprise affecting legal liability for negligence exists only if each party has equal right to control the conduct of the other in acts or omissions causing or contributing to injury. *Adams v. Dunton* (1933), 284 Mass. 63, 187 N. E. 90.

To the same effect are a large number of cases, reference to which may be found in 23 Words and Phrases (perm. ed.), p. 80. Additional cases will be found on page 25 of the 1946 Supplement.

In this connection it is pointed out that as between the members of a joint enterprise the doctrine of imputed negligence has no application. Ordinary negligence on the part of a member of a joint enterprise resulting in injury to the other member renders him liable for the injury. See *O'Brien v. Woldson* (1928), 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436, and extensive note. See also *Campbell v. Campbell* (1932), 104 Vt. 468, 162 Atl. 379, 85 A. L. R. 626, 632, and note.

(2) Sufficiency of evidence to sustain finding of negligence against Gehrung. In response to the contention that the evidence does not support a finding of negligence as to Gehrung, counsel for respondents argue that Gehrung was traveling on a slippery black-top highway, in a snowstorm, and knew that he was approaching a dangerous intersection; because of the character of Highway O to the left and north he knew that it was necessary to watch closely to the left to see if there was

anybody coming near the mailbox or the arterial sign. He could have made an observation to the left and have seen a car on County Trunk O opposite the arterial sign when he was at a point two hundred twenty-five feet west of the point of collision. Gehrung could not have seen the Fenske car then because it was not there. The Fenske car reached the mailbox one hundred fifty feet north of the intersection when Gehrung was one hundred feet west of the intersection. Gehrung looked again when he was about sixty feet west of the intersection. He looked three times in the direction of the Fenske car while he was traveling one hundred twenty feet and saw what there was to see. He certainly was not negligent as to lookout. It is argued further that at a point one hundred eighty feet west of the point of collision he could have looked to the left and observed a car on County Trunk O opposite the mailbox one hundred fifty feet north of the intersection but he did not look and he did not see the Fenske car until he was sixty feet west of the center of the intersection. The difficulty with this argument is that it disregards undisputed facts in the case and fails to take into account the fact that Gehrung saw the Fenske car when it was north of the arterial sign at which it was the duty of Fenske to stop. Gehrung had a right to assume that Fenske would obey the law and stop at the arterial sign. *Schmit v. Jansen* (1945), 247 Wis. 648, 20 N. W. (2d) 542. Proceeding upon that assumption, when Gehrung next looked to the north he saw that the Fenske car had passed the arterial sign and was not stopping. Because of the slipperiness of the surface of the highway he concluded that he could not stop, turned off the highway and increased his speed in an effort to avoid the accident. He was in an emergency created by the negligence of Fenske. Counsel for Fenske assumes that he could have stopped in thirty-five feet, but there is no evidence to that effect, and in any event, if in the emergency he made a mistake, it would not amount to negligence.

It is the well-settled law of this state that an automobile driver who, by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice. *Drakenberg v. Knight* (1922), 178 Wis. 386, 190 N. W. 119; *Parkes v. Lindenmann* (1915), 161 Wis. 101, 151 N. W. 787.

The court gave a proper instruction on the conduct of one confronted with an emergency but made it applicable to both defendants. There is no evidence in the record that Fenske did anything while he was consciously in an emergency. He testified:

"As I looked to the right [to the west], well, I just saw a car, that there was a flash and it was over with."

The court asked him how far his car was from Gehrung's car when he first saw it. "It was about the length of a car, about sixteen feet," he replied. Evidently the jury were misled by the instruction because it was made applicable equally to Fenske and Gehrung. Gehrung did act after he knew that he was in an emergency. The instruction was therefore applicable to him. Nowhere is it pointed out what, if anything, Gehrung could have done to avoid the accident after he realized that the Fenske car had failed to stop at the arterial and was coming on at a high speed. The testimony of the witness Erma Pollock and the physical facts strongly support the testimony of Gehrung, which is uncontradicted.

We are unable to find any evidence which sustains the finding of the jury to the effect that Gehrung was guilty of negligence in regard to lookout and management and control.

Fenske must have been coming down the hill from the north at a very much greater speed than he and his son say. The violence with which he struck the Gehrung car, the distance

that the blow drove the car, the fact that after striking it his own car went on and into the ditch, are all circumstances indicating a very high speed. The duty of Fenske under the circumstances seems not to have been emphasized on the trial. Gehrung having looked, having seen the car north of the arterial sign, was under no duty or obligation to look again, having the right to assume that Fenske would stop and that Fenske coming from his left would yield the right of way. If Fenske had stopped Gehrung would have had ample time to clear the intersection. But he did look when he was sixty feet from the intersection, and discovered that the Fenske car was not stopping. After that he did everything that he could do under the circumstances to avoid the accident.

Gehrung, in addition to having a right to rely upon Fenske's car stopping at the arterial sign, was obliged to look to the south where oncoming traffic, if any, would have the right of way over him. Fenske was obviously as guilty of negligence as a driver could very well be and not be guilty of gross negligence. He was proceeding at an unlawful speed, he was negligent as to lookout, as to control and management, and in failing to stop at an arterial highway and to yield the right of way. His negligence in these respects was the sole cause of the collision. Fenske lived only a short distance south of the intersection and was perfectly familiar with the intersection. He knew the arterial sign was there. He knew it was his duty to stop. He knew it was his duty to yield the right of way to the car coming from his right. The emergency was created by the act of Fenske and not by anything that Gehrung did or failed to do.

(3) Imputable negligence. As already indicated, Gehrung and Klas were not engaged in a joint enterprise for the reason that Klas had no control or right of control over the Gehrung car, under the circumstances of this case.

Not being engaged in a joint enterprise, if Gehrung was negligent his negligence was not imputable to Klas. Only

when an enterprise is joint to such an extent that each of the joint enterprisers will in the case of the negligence of one of them be responsible to the injured person, is the negligence of one imputable to the others. No claim is made or can be made in this case that Klas was in any way liable to Fenske for the injuries which he sustained.

(4), (5) Contribution. There being no evidence to sustain the finding of negligence as to Gehrung, a consideration of the right of contribution is not necessary to a decision of this case.

*By the Court.*—The parts of the judgment appealed from are reversed, and the cause is remanded to the trial court with directions to enter an amended judgment dismissing the plaintiff's complaint against Gehrung; and the defendant Fenske and his insurance carrier's cross complaint against Gehrung. There being no appeal from that part of the judgment awarding recovery by plaintiff against Fenske for seventy per cent of the damages and costs, the court has no jurisdiction to correct it. Gehrung to receive costs in this court against the plaintiff and the defendant Fenske and his insurance carrier.

RECTOR, J., took no part.