ZEISE, by Guardian *àd litem,* and others, Respondents, vs.
DEPREY and others, Appellants.

*February 18—March 29, 1948.*

For the appellants there were briefs by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson.*

For the respondents there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan* and *J. Robert Kaftan.*

WICKHEM, J.   The accident happened on February 20, 1943, at about 10 o'clock in the morning.   Defendant Herlache was an employee of defendant Deprey.   He was driving a one-ton Chevrolet truck in a southerly direction on United States Highway 141 at a point about a half mile south of the city limits of Green Bay.   Highway 141 is of concrete, eighteen feet wide with a black line down the middle, was straight and level at or near the place of the accident. · There was a dispute as to the precise condition of the surface of the concrete with respect to ice and with respect to its slippery condition.   There had been considerable snow; the highway had been plowed leaving a bank of snow about two and a half feet deep on the shoulder of the road about eight feet west of the west edge of the concrete.   In the vicinity of the accident there were no sidewalks and the pedestrians customarily walked on the plowed snow deposited on the shoulder of the highway. Roger was five years and seven months old at the date of the accident and his home was located on the west side of the highway about opposite the place where the accident occurred. Immediately before the accident Roger had come out of his house intending to cross the highway to visit a friend on the other side of the road.   He climbed the snowbank, proceeded across the shoulder and onto the highway and was struck by defendant's truck.   Herlache testified that when he was fifty to seventy-five feet north of the place of impact he first saw Roger coming over the top of the snowbank; that the truck was then moving at a speed of not more than twenty miles an hour on the west side of the highway; that when he saw the

boy he blew his horn and turned his truck toward the east side of the highway; that he took his foot off the accelerator preparatory to applying the brakes; that he was not able to turn more sharply to the left or apply his brakes more forcibly because of the icy condition of the highway; that he took these steps in order to give the boy more room in case he might get onto the highway.

Herlache testified that after so traveling for twenty or thirty feet it became apparent that Roger was going to cross the road and that if he was going to avoid a collision with the boy he must swing to the right and attempt to pass behind him; that he immediately turned his truck toward the right side of the highway in such an effort and would have been successful had not Roger suddenly stopped when the truck was only about four or five feet away from him; that he slowed down the truck as much as he could but struck the boy with the left front portion of the truck or a protruding axle.

Defendants' contention is that since the jury exonerated Herlache of negligence in so far as speed and lookout are concerned it must be supposed that Herlache acted in an emergency created by the boy's negligence and that a mere failure to avoid the accident or even to take what might now appear to be the best possible means to avoid it would not warrant a finding of negligent management and control.

The contention must be rejected. The jury could infer that Herlache was more than fifty to seventy-five feet away from the boy when he first saw the latter proceeding toward the road. According to defendants' testimony a five-year-old child had waded five feet through deep snow, walked across eight feet of shoulder, and seven and a half feet of concrete and stopped for some undisclosed purpose by the time the truck was four or five feet from him. Assuming the speed asserted by Herlache the truck was proceeding about thirty feet a second and must have been at least two hundred feet away when the driver first saw the boy approaching the highway.

Defendants contend that this analysis overlooks the fact that upon first seeing the child Herlache took his foot off the accelerator and that after proceeding twenty to thirty feet he put on his brakes to some extent. This does not improve defendants' position because according to this the boy covered thirteen feet or more while Herlache was covering some twenty to thirty feet at a speed somewhat reduced by reason of taking his foot off the accelerator but not impeded in any way by the brakes. This indicates just as inevitably that Herlache was further back than he estimated when he first saw the child heading for the roadway. He stated that he could have stopped within sixty feet and the jury was entitled to believe that he should have done so. Even when little children are playing on the side of the highway drivers should get their cars under control. When the child approaches the road with the evident purpose of crossing a jury can infer negligence if the driver engages in a guessing contest with the child since one of the characteristics of childhood is the tendency to impulsiveness and the doing of the unexpected. A jury could conclude that Herlache should have reduced his speed and made sure that he knew what the child's intentions were before he proceeded. He made no effort to try to stop the truck until the child was within forty feet of him and then he turned right and put on his brakes. There was no other traffic on the road and a jury could conclude not only that he was negligent but very much more so than the child. True, the road was slippery although there is considerable difference of opinion as to how slippery it was but the jury were entitled to believe that the truck could have been brought to a stop in plenty of time to avoid the accident. It is alleged that there was an emergency and that Herlache should have the benefit of that rule but, as pointed out by plaintiffs, there is always some sort of an emergency immediately before an accident. The jury could infer that here the emergency resulted from failure on the part of Herlache to get his car under immediate control at a time when he could avoid the accident by so doing. *Siegl v. Watson,* 181 Wis. 619, 195

N. W. 867; *Klas v. Fenske,* 248 Wis. 534, 22 N. W. (2d) 596.

Assuming that the complaint is not dismissed defendants contend that they should have a new trial on the issue of liability. This claim is based upon several grounds but we consider it necessary to discuss only two of these. Defendants claim that as a matter of law Roger was clearly guilty of failing to yield the right of way and that the finding of the jury to the contrary not only has no support in the record but conflicts with the finding that he was negligent as to lookout. Reliance is had upon *VanLydegraf v. Scholz,* 240 Wis. 599, 602, 4 N. W. (2d) 121. In that case a child of about six years was found guilty of negligent lookout and also failure to yield the right of way. That case involved a city street at an intersection which was regulated by traffic lights. The child crossed against the lights and at a place other than a crosswalk. The evidence was to the effect that the child had been thoroughly trained both at home and at school as to what she should do at street intersections. She knew that if she saw a car come she "had to wait until the car goes by," and she knew that cars were coming. This court said, "this is all a child needs to know in order to be obligated to yield the right of way." This is, of course, far from a holding that a child of five or six years is charged with knowledge of all statutory rules of the road. About the most that can be said in this case is that Roger had been taught to look before he entered onto the road and to wait for approaching cars to pass before he attempted to cross. Following the reasoning of the *VanLydegraf Case* it may be that technically there were two items of negligence on the part of Roger but since they both proceed from his failure to keep a lookout or to see the truck we cannot believe that the jury's finding is fatally inconsistent or that the percentages were prejudicially affected by failure to find negligence in respect of yielding the right of way.

It is next contended that it should be held that the percentages established by the jury were grossly disproportionate.

The case of *Volkmann v. Fidelity & Casualty Co.* 248 Wis. 615, 22 N. W. (2d) 660, is cited to this point. Quite a different case was there presented. There the child was two years older than Roger. Instead of a country road he was playing on a sidewalk in the vicinity of a busy city street. The driver of the vehicle which struck him was given comparatively short time to act because the boy darted into the street and ran diagonally across it. There the bus driver involved was carrying a large number of children on the bus and had a heavy responsibility to the passengers in his vehicle. Even there this court was unable to say as a matter of law that the boy was more negligent than the bus driver but the circumstances above noted were considered to indicate that the jury had overrated the quality of defendant's negligence.

We are not persuaded that the situation here is analogous or that the percentages fixed by the jury are so disproportionate as to warrant disturbing its finding in this respect.

*By the Court.*—Judgment affirmed.