BACHMANN and others, Appellants, vs. BOLLIG and another, Respondents.

*April 8—May 3, 1955.*

For the appellants there was a brief by *Arthur, Dewa, Nestingen & Tomlinson* of Madison, and oral argument by *Ivan A. Nestingen.*

For the respondents there was a brief by *Riley, Riley & Pierce* of Madison, and oral argument by *Thomas W. Pierce.*

MARTIN, J.  On the afternoon of October 11, 1953, the Bollig car, in which plaintiffs were passengers, was traveling on County Trunk Highway I in Richland county. The highway is a hilly and winding black-top pavement between 19 and 20 feet wide with shoulders of two to two and one-half feet wide. There was no marked center line. It was a sunny day and the pavement was dry.

Immediately before the collision the Bollig car was descending a "fairly steep grade" (no other description in the record) in a southerly direction at a speed of 35 to 40 miles per hour. Bollig testified that he braked his car as he came down the hill and made a curve to the right, or west, at about 28 to 30 miles per hour. As he rounded the curve he observed the Johnson car approaching from the opposite

direction about 150 feet ahead. He testified that he did not particularly notice Johnson's position on the highway. At a point 50 feet beyond the curve the two automobiles collided head on in the north half, or Bollig's side, of the road. At the place where the accident happened there was a deep ditch or ravine sloping down from the edge of the north shoulder.

Bachmann's testimony was that from his position on the front seat beside Bollig he saw the Johnson car at about the same time that Bollig did, and that it was between 150 and 200 feet away. He stated:

> "It is a very sharp curve and probably about that time I noticed the approaching vehicle coming right out of the sun, perhaps even on the shoulder of our right-hand side because of the dust I seen. Mr. Bollig was around the curve, . . . and we continued, and perhaps 30 or 50 feet after we got out of the curve the impact occurred."

The physical facts established that the point of impact was 50 feet from the curve. Even if it could be said that Bollig's lookout was inefficient because he did not notice that Johnson was on the wrong side of the road and Bachmann "perhaps" did, it could not have been causal since he then had hardly two seconds in which to act before the cars collided. It was thus incumbent upon the plaintiffs to show that Bollig could and should have seen the other car at a greater distance.

Plaintiffs contend that the jury could disbelieve Bollig's testimony as to seeing the Johnson car or believe that he should have seen it from a greater distance. But the record contains no evidence that the Johnson car would have been visible to Bollig before he came out of the curve. Both Bollig and Bachmann testified they saw it as they came around the curve and that it was then approximately 150 feet ahead, that distance being an estimate on the part of each. There is no testimony in the record to show that the landscape toward the southwest from above the curve would have permitted Bollig an unobstructed view of that portion of the

road upon which Johnson was then traveling, nor can that fact be determined from photographs in evidence. One of such photographs shows that from above the curve the view of part of the highway extending to the west could have been obstructed by trees.

Plaintiffs compare the situation here with that in *Whirry v. Rural Mut. Casualty Ins. Co.* (1954), 267 Wis. 302, 306, 64 N. W. (2d) 841, where Whirry collided head on with another car at a curve. On the question of Whirry's lookout this court said:

"The appellants call attention to testimony of the record that, in their minds, establishes that because of the curve in the road, because of a bank to his left, and because of certain trees, brush, and weeds growing thereon, Whirry was unable to see the Lloyd car, and particularly its position upon the highway, before he did. There is other testimony in the record which, if believed by the jury, justified its answers with respect to Whirry's lookout. There is testimony permitting the jury to infer that he could have seen the Lloyd car approaching much sooner than he did and that a driver maintaining a proper lookout could have determined the position of an approaching car upon the highway long before he did."

Plaintiffs offered no such testimony in this case. There is no evidence from which the jury could infer anything except that Bollig saw the Johnson car as soon as it was possible for him to do so. Other cases cited by the plaintiffs are cases in which there was conflicting evidence or evidence susceptible of more than one inference, and are therefore not applicable.

Some point is made of the fact that as Bollig came out of the curve he was facing west and the sun was in his eyes; that Bachmann testified he was blinded by its rays. Bollig testified that the sun did not bother him. We cannot see any significance in this since, even though "blinded," Bachmann saw the Johnson car, as did Bollig, when they came out of

the curve. It cannot be inferred from such evidence that Bollig's vision must have been so impaired that he should have slowed down or stopped. The situation does not come within the rule of *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134.

There being no evidence to support the jury's finding as to causal negligent lookout on the part of Bollig, the trial court properly changed the answer to that question of the special verdict.

The finding that Bollig was negligent as to speed was likewise properly changed by the trial court. Johnson was found causally negligent in being on the wrong side of the road. There is some conflict in the testimony on the rate of Bollig's speed, Bollig stating that it was 28 to 30 miles per hour as he rounded the curve, Bachmann stating he thought it was 35 to 40 miles per hour entering the curve and that Bollig "probably had a little trouble negotiating the curve." It is significant, however, that Bollig testified he did not invade the left lane on the curve and, although plaintiffs stated that the tires squealed and their bodies swayed somewhat as the car made the turn, they did not maintain that it was out of control or that it left its proper lane of travel.

It is true that negligence as to speed under sec. 85.40 (2) (a) and (b), Stats., is generally a question for the jury, but there must be evidence that such speed has a bearing on the driver's ability to control his vehicle. It was not Bollig's speed, whatever it was, that made it impossible for him to get out of Johnson's way. Even if he could and had stopped or otherwise attempted to avoid the Johnson car within the 50 feet before the impact occurred, the accident would have happened anyway. Johnson was on the wrong side of the road and did not see the Bollig car until the moment of the crash.

A traffic officer testified that after the collision the cars were in the same position as they were at the time of impact, since debris caused by the crash lay just under and between them; that the left front wheel of the Johnson car was four feet ten inches from the north edge of the pavement, the left rear wheel six feet three inches from the edge; that the right front wheel of the Bollig car was three feet three inches and the right rear wheel four feet six inches from the north edge of the pavement. Thus Bollig had between his car and the edge of the north shoulder above the ravine scarcely more than five feet in which to move out of Johnson's way and the position of the Johnson car shows that it would have struck the Bollig automobile even if the latter had been farther to the north than it was.

In *Clark v. McCarthy* (1933), 210 Wis. 631, 635, 246 N. W. 326, this court held:

"When two cars proceeding upon a highway in opposite directions collide, the speed of either or both vehicles can only contribute to the accident in connection with some circumstance. For example, if the speed of the vehicle contributes to want of control or to its presence on the wrong side of the highway, it may be considered one of the causes of the collision. It is difficult to see, however, how the mere speed of a vehicle can be a factor in such an accident, provided both cars maintain their proper place on the highway, and provided the highway itself is wide enough to permit them to pass each other without interference." See also *Konow v. Gruenwald* (1942), 241 Wis. 453, 6 N. W. (2d) 208.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*).   I am impelled to respectfully dissent in this case on the ground that there was credible evidence in the record to sustain the jury's findings of causal negligence on the part of the defendant Bollig as to both lookout and speed.

According to Bollig's testimony, the Johnson car was first sighted by Bollig after the latter had "come out" of the curve and had straightened his car out. He estimated the distance to the Johnson car as then being 150 feet, and further testified that the Bollig car thereafter traveled 50 feet to the point of impact, which would mean that the Johnson vehicle must have traveled 100 feet in the same space of time. Bollig admitted that he paid no particular attention to what portion of the highway the Johnson automobile was traveling.

The photographs offered in evidence in behalf of the plaintiffs clearly establish that it was physically possible for Bollig to have seen the approaching Johnson automobile considerably sooner than Bollig did. For example, the photograph constituting Exhibit 25 was taken 120 feet west of the point of impact so that the camera was pointed at the curve in the highway around which the Bollig car had traveled, and shows to good advantage the terrain of the land lying within the interior angle of the curve. Inasmuch as the point of impact was at least 50 feet west of the curve, Exhibit 25 shows at least 170 feet of the highway proceeding westerly from the curve and at least 200 feet of the highway northerly from the curve, and all the land lying between. This photograph shows the intersection to be "open" with no tree standing in the land lying within the interior angle of the curve. There are a few low-growing bushes but these are not high enough to obstruct the view of any one driving an automobile on the highway who was looking across the interior angle of the curve to the highway beyond. The only trees visible are on land marking the outside of the curve, and not the interior angle thereof. The jury, therefore, had the right to infer from such photograph that Bollig could have seen the Johnson car before Bollig had reached the curve. The fact that Bollig never noticed the position of the

Johnson car in the highway until the impact also is convincing evidence that even after he did sight it he made no efficient observation with respect to it.

As to the question of proximate cause, if it was possible for Bollig to have seen the Johnson car much farther back from the point of impact than 50 feet (and the jury had the right to so infer from Exhibit 25), then Bollig had ample time to have turned his car partly onto the shoulder and thus avoided the collision. The photographs disclose the several feet of good usable shoulder all along the north side of the highway.

As to the matter of causal lookout, this case seems to be clearly governed by our decision in *Whirry v. Rural Mut. Casualty Ins. Co.* (1954), 267 Wis. 302, 64 N. W. (2d) 841. As well pointed out in the opinion in that case, the emergency rule does not apply in favor of a driver whose own negligence as to lookout has contributed to cause the emergency.

As to the issue of speed, sec. 85.40 (2) (b), Stats., imposed the duty upon Bollig to operate at an *"appropriate reduced speed . . . when approaching and going around a curve."* He estimated his speed at not over 30 miles per hour going around the curve, while Gottfried Bachmann, a passenger in the car, estimated such speed from 35 to 40 miles per hour. The jury had the right to find even that speed was negligent if because of the sharpness of the curve such speed prevented Bollig from having his car under such control as to enable him to make a proper observation of approaching traffic such as the Johnson car. The inescapable inference to be drawn from Bollig's testimony is that he was prevented from making such proper observation by his engrossment in the immediate task of negotiating the curve, and that his speed was a contributing factor to this situation. In other words, if he had been traveling slower around the curve

than he did he would have been enabled to have kept a proper lookout ahead and to have turned his vehicle out of the path of the Johnson car which evidently was "cutting the corner" in attempting to proceed around the curve.

The plaintiffs would have the right to recover judgment on the verdict against the defendant Bollig and his insurance carrier if Bollig was causally negligent as to *either* speed or lookout inasmuch as there is no issue of comparative negligence as between plaintiffs and Bollig.

It is of some significance to note that at the conclusion of the taking of testimony, counsel for defendant Bollig and his insurance carrier moved for a directed verdict as to such defendants, and, in ruling thereon the trial court commented as follows:

"I think that perhaps there is merit in it, and yet I think it is a clear question for the jury as to speed, lookout, and driving on the right-hand side of the road. I think the evidence is very slight as to the negligence of Mr. Bollig on the question of yielding the right of way but the court feels it would be error not to submit it in view of the fact one of the witnesses testified that both were driving in the middle of the road. Motion denied at this time."

It is thus apparent that the trial court at that time thought that a jury issue was presented as to the possible causal negligence of Bollig with respect to speed and lookout, and that the issue as to which he was in doubt was that of whether Bollig was traveling on his own proper side of the highway.

For the reasons stated, I would reverse and remand with directions to reinstate the verdict and grant judgment thereon in behalf of plaintiffs.