MLINAR, Administrator, Appellant, vs. OLSON TRANSPORTATION COMPANY and others, Respondents, and two other cases.

*September 14—October 11, 1955.*

For the appellants there were briefs by *Arlo A. McKinnon* and *Charles M. Hanratty,* both of Milwaukee, and oral argument by *Mr. Hanratty.*

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Powell.*

CURRIE, J.   It is the contention of counsel for the plaintiffs on this appeal that there was sufficient credible evidence in the record to support a jury finding of negligence upon the part of the defendant Bretl, both as to lookout and management and control, and, therefore, it was error on the part of the learned trial court to have directed a verdict for the defendants.

With respect to the issue of lookout, it was the testimony of Bretl that he first observed the approaching Buick when the tractor-trailer combination was entering the north overpass and that the Buick was then 300 to 500 feet distant. He also testified the Buick was then at the point where the west traffic lane of Highway 141 merged with Highway 57. The distance from the north end of the north overpass to such point of merger is 560 feet.

The course of the west or southbound traffic lane of Highway 141 within the interchange is that of a curve. One of the briefs refers to the interchange as being in the form of a pretzel, which is rather an accurate description. The general direction of such west traffic lane of Highway 141 to its point

of merger with Highway 57 is southwesterly, while such direction from the point of divergence with Highway 57 to the south overpass is southeasterly. It is the contention of plaintiffs' counsel that, in spite of some difference in elevation, Bretl could have seen the approaching Buick for a distance of approximately 1,100 feet, and, therefore, a jury issue was presented as to whether Bretl should not have seen the Buick sooner than he did.

In *Bachmann v. Bollig* (1955), 270 Wis. 82, 70 N. W. (2d) 216, this court held that the failure of an automobile driver to see an approaching vehicle across a curve did not present a jury issue as to lookout under the facts of that case. In the instant case it would also have been necessary for Bretl to have looked to his left across a curve in order to have seen the Buick sooner than he did. Furthermore, Bretl was required to direct most of his attention to the right, because of the danger of possible approaching traffic on Highway 57 crossing into the west traffic lane of Highway 141 at the point of merger. It is our conclusion that Bretl could not have been found negligent as to lookout for failing to have seen the Buick more than 560 feet from the point of impact.

We deem that the issue as to whether a jury issue is presented as to Bretl's management and control to be a closer question than that of lookout.

Bretl testified that as soon as he saw the Buick approaching in the west or southbound one-way traffic lane of Highway 141 he applied his brakes in a pumping manner and continued to so apply them until the point of impact. The tractor was equipped with a tachograph which recorded the speed of the tractor-trailer combination unit at all times. Such tachograph record disclosed that the unit was traveling at a speed of 43 miles per hour just before applying the brakes and that the speed had been reduced to 22 miles per hour at the point of impact. The tractor-trailer unit weighed 11,000 pounds, and was loaded with 20,000 pounds of iced fresh fish, so that the

total gross weight was 31,000 pounds. The record is silent as to the distance required to bring the unit carrying such load to a full stop from a speed of 43 miles per hour. There is nothing to indicate that the speed of the Buick, which was from 65 to 70 miles per hour when it entered the interchange, was reduced at all prior to the accident.

Bretl testified that the reason that he applied the brakes in a pumping manner instead of with a continuous downward pressure was to avoid "jackknifing" the heavily loaded unit which would have been likely to tip it over. Plaintiffs called as a witness one Mickelson, who was an expert in servicing Mack trucks and tractors, and Mickelson testified that under the circumstances he would have applied the brakes full force instead of in a pumping manner. However, on cross-examination, Mickelson admitted that if the brakes had been applied full force there was danger of locking the wheels which would result in skidding and possible jackknifing. In any event, the proper test was not that which Mickelson would have done in the situation facing Bretl but what was the proper or accepted method of applying brakes and stopping the unit employed by the average prudent driver under similar circumstances.

Under the time computation most favorable to plaintiffs there was but the lapse of a maximum of three and one-half seconds from the moment Bretl first saw the Buick wrongfully proceeding against traffic in the one-way traffic lane until the impact. As Bretl stated it, the accident occurred within "the wink of an eye" after he first sighted the Buick. It is clear that under the circumstances, Bretl was faced with an emergency as a matter of law. *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86; *Raddant v. Tamminen* (1954), 266 Wis. 49, 62 N. W. (2d) 428; *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150; and *Feinsinger v. Bard* (7th Cir. 1952), 195 Fed. (2d) 45. His duty therefore was to make "such a choice as a person of

ordinary prudence placed in such a position might make, even though he did not make the wisest choice." *Klas v. Fenske* (1946), 248 Wis. 534, 546, 22 N. W. (2d) 596.

We conclude that a finding of negligence on the part of Bretl as to mangement and control could not be predicated upon the manner in which he applied his brakes. Furthermore, it would be sheer speculation to assume that the accident would have been avoided if he had been able to have brought the tractor-trailer unit to a full stop.

Counsel for plaintiffs argue further that Bretl might have avoided the accident by turning the tractor-trailer unit out of the path of the oncoming Buick. It was Bretl's testimony that both vehicles were proceeding in the west half of the southbound one-way traffic lane of Highway 141 and met head on there and then after the impact moved into the east half of such traffic lane. Traffic officers testified that oil and water spots and most of the debris were found in the east half of such traffic lane, which would indicate that the impact occurred there, although photographs showed marks on the west half of the pavement. We consider that the evidence would have permitted a jury to reach any one of the following conclusions: (1) That the collision occurred in the west half of the southbound traffic lane as testified to by Bretl; (2) that it happened in the east half of such traffic lane as a result of both vehicles continuing the same course as they had been immediately prior thereto; or (3) that both vehicles had been proceeding in the west half of such traffic lane and then just prior to the impact both had swerved into the east half so as to come together head on there.

Inasmuch as Bretl had an equal right to travel in the east half of such one-way traffic lane as he did the west half, it would appear to us to be immaterial which of the aforementioned hypotheses he adopted. It would not have constituted negligence on the part of Bretl, faced as he was with an emergency in no way traceable to any neglect on his part,

to have either turned into the opposite half of the roadway in an attempt to avoid an accident, or to have continued in his original course in the expectation that the other vehicle would turn to one side or the other to prevent a collision. This court, in *Hoehne v. Mittelstadt, supra,* held that failure of a driver faced with a sudden emergency to do anything within the space of two and one-half seconds was not negligent as a matter of law. In the instant case Bretl was operating a heavily loaded tractor-trailer unit having an over-all length of approximately 40 feet which cannot be maneuvered from one side of a highway to the other as quickly or easily as an ordinary automobile.

We, therefore, conclude that the learned trial court properly determined that there was no credible evidence upon which a jury might have found the defendant Bretl guilty of causal negligence either as to lookout or management and control.

*By the Court.*—Judgments affirmed.