JEWELL, Plaintiff and Respondent, vs. SCHMIDT and another, Defendants and Respondents: FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Defendants and Appellants.

MELLEN and another, Plaintiffs, vs. SAME, Defendants and Respondents: SAME, Defendants and Appellants.

*May 9—June 4, 1957.*

242

For the appellants there was a brief by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross* and *H. M. Langer*.

For the respondent Martha Jewell there was a brief and oral argument by *D. V. W. Beckwith* of Madison.

For the respondents Sylvester Schmidt and the Mutual Automobile Insurance Company of Wisconsin there was a brief and oral argument by *Frank M. Coyne* of Madison.

CURRIE, J.   The three issues presented on this appeal are:

(1) Was Jewell entitled to the benefit of the emergency doctrine so as to absolve him of all causal negligence as a matter of law?

(2) If the foregoing question is answered in the negative, did Martha Jewell assume the risk of her husband's causal negligence as a matter of law?

(3) Was there sufficient proof established of a contract entered into between Martha Jewell and the clinic and hospital whereby she agreed to pay the unpaid balance of her medical and hospital bills, as will permit her to recover the amount of such unpaid bills from her husband and the latter's insurance carrier?

In order to pass upon the first issue it is necessary to review the pertinent evidence. For several miles on either side of the place of accident Highway 60 winds its way in a general east-west direction between the Wisconsin river on the south and the bluffs rimming the river valley on the north. At the point of the accident the bluffs are indented by a narrow north-south valley, which has a low marshy bottom with a small stream flowing through it into the river. Approaching this valley from either direction, the highway bends around the river side of the noses of the bluffs forming the east-west boundaries of this valley. The road across the mouth of the valley forms a looping "U"-shaped curve with a concrete bridge crossing the stream at a point near the bottom of the "U," such bridge being slightly to the northwest of the exact center thereof. The collision occurred about 20 feet west of the west end of this bridge at a point where there is a considerable curve in the highway. It is a left-hand curve for traffic moving westerly, and a

right-hand curve for east-moving vehicles. There is an official highway curve sign with a recommended speed of 35 m. p. h. located at the nose of each bluff. The sign at the west bluff is approximately 400 feet west of the point of impact, while that to the east was approximately 1,090 feet east of such point of collision.

The accident occurred at about 8:15 to 8:20 p. m. The sun had set that day at 7:44 p. m. and both cars had been driven some miles prior to the collision with the headlights turned on. It is undisputed that the Schmidt car crossed over the white center line of the 22-foot-wide black-top pavement about 60 feet west of the point of collision and did not again regain its proper side of the road. The right front portions of each vehicle collided with the other, and at the time of impact the left front wheel of the Jewell car was about 18 inches south of the highway center line. After the accident the two cars were in approximately the same position as when the impact occurred except that the rear end of the Schmidt car had swung around somewhat to the north. Skid marks extended back from the rear wheels of the Schmidt car approximately 100 feet, the first 60 feet being on the north side of the highway. There were skid marks of only eight to 10 feet extending eastward from the rear wheels of the Jewell automobile.

Schmidt was a widower sixty-nine years of age, who had left a tavern about a mile west of the scene of the accident intending to drive easterly to his home in Muscoda. He was traveling at a rate of 45 miles per hour and first saw the lights of the Jewell car across the curve and through the trees when it was approximately 1,500 feet distant. He testified that he first saw both headlights of the Jewell car when he was about six rods west of the bridge. Because of the higher speed at which the Jewell car was traveling this would mean that the Jewell automobile was more than six rods distant to the east from the west end of the bridge.

Schmidt's explanation for getting over into the wrong side of the highway is as follows:

"*Q.* Why did you get over on the wrong side of the road? *A.* Well, just naturally on a bend, you know, you naturally will."

Schmidt claims that he was endeavoring to get his car back to the south on his proper side of the center line of the highway when the impact occurred.

Mr. and Mrs. Jewell reside at Richland Center and had left there about 7:45 p. m. for the purpose of making a trip to Iowa to visit relatives. They were accompanied by Mrs. Jewell's little granddaughter, the plaintiff Kristine Ann Mellen. Upon arriving at the Crawford county line, Jewell reduced his speed to 55 miles per hour in order to comply with the speed limit for nighttime driving. He failed to see the curve sign with the 35 m. p. h. recommended speed limit as he rounded the nose of the bluff to enter the decline down into the valley toward the bridge, and continued his speed of 55 miles per hour up until the time of impact. He failed to see the lights of the Schmidt car until he was 125 feet away from it, and then it was already on the north side of the highway in Jewell's own lane of travel. His testimony is conflicting as to what he then did. At one place he testified to applying his brakes so as to lock the wheels and turning his car to the left to avoid the collision, and at another place he stated that he had no recollection of having done so.

At the point of collision there were guard posts erected with a cable strung between them, which posts and cable were but two feet north of the north edge of the black-top pavement. Thus, Jewell was prevented from turning to the right to avoid the collision, and, going at a speed of 55 miles per hour, it was also impossible for him to have stopped in time to avoid the accident.

Appellants contend that the wrongful invasion by Schmidt of Jewell's lane of travel created an emergency which absolved Jewell of any causal negligence. In support of such position appellants cite *Schwab v. Martin* (1938), 228 Wis. 45, 279 N. W. 699; *School v. Milwaukee Automobile Ins. Co.* (1940), 234 Wis. 332, 291 N. W. 311; *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150; *Roberts v. Knorr* (1951), 260 Wis. 288, 50 N. W. (2d) 374; *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86; *Bachmann v. Bollig* (1955), 270 Wis. 82, 70 N. W. (2d) 216; and *Mlinar v. Olson Transportation Co.* (1955), 270 Wis. 622, 72 N. W. (2d) 392.

Such contention overlooks the well-established principle that, if one's own negligence contributes to precipitate himself into a situation where he is confronted with an emergency, he cannot avail himself of the protection of the emergency doctrine. *Klas v. Fenske* (1946), 248 Wis. 534, 536, 22 N. W. (2d) 596; *Whirry v. Rural Mut. Casualty Ins. Co.* (1954), 267 Wis. 302, 308, 64 N. W. (2d) 841; and *Metz v. Rath* (1957), 275 Wis. 12, 19, 81 N. W. (2d) 34. We consider that the facts in the instant case bring it squarely within this qualification of the emergency rule because of the jury's findings of causal negligence as to both lookout and speed on the part of Jewell.

However, the appellants challenge such findings of causal negligence on the part of Jewell. If appellants were correct as to their contention that the emergency doctrine applied then, of course, Jewell could not be found causally negligent as to management and control. Therefore, for the purpose of this opinion we will only consider the issues presented as to Jewell's causal negligence with respect to lookout and speed.

Jewell did not see the lights of the Schmidt car until it was 125 feet distant. On the other hand, Schmidt saw both headlights of the Jewell automobile when Schmidt was six rods, or 99 feet, west of the bridge. Taking into considera-

tion the fact that Jewell was traveling at the rate of 55 miles per hour while Schmidt's rate of speed was 45 miles per hour, this means that the two vehicles were approximately 220 feet apart at the time Schmidt was able to see both headlights of the approaching Jewell car. Furthermore, photographs received in evidence, particularly Exhibit 8, would fully warrant the jury, and this court, in concluding that there was clear visibility from a point 300 feet distant from the bridge, either east or west, to a point 300 feet distant on the opposite side of the bridge. Therefore, there was ample credible evidence upon which the jury could find that Jewell was negligent in not seeing the Schmidt car until the two vehicles were 125 feet apart. Such negligence would be causal if it constituted a substantial factor in producing the accident. The jury could rightfully infer that, if Jewell had seen the Schmidt car at any time when the two vehicles were 220 to 600 feet apart, Jewell would have reduced his speed because of the danger which always exists in meeting another car on a dangerous curve. He also would have observed the Schmidt car when it started to gradually veer over into the north lane of travel instead of only seeing it after it was already over the center line. Hence, Jewell would have been afforded more time to either stop or greatly reduce his speed, thus enabling Schmidt to regain his own side of the highway before a collision occurred. We deem there is ample credible evidence to support the jury's finding that Jewell was causally negligent as to lookout.

Appellants do not argue that Jewell was not negligent as to speed but maintain that such negligence was not causal. In support of such contention they rely upon *Clark v. McCarthy* (1933), 210 Wis. 631, 635, 246 N. W. 326. We do not consider such cited case to constitute authority for holding that Jewell's negligent speed in the instant case could not be causal. In *Heagney v. Sellen* (1956), 272 Wis. 107, 112, 74 N. W. (2d) 745, this court stated:

"Appellants cite the case of *Clark v. McCarthy,* 210 Wis. 631, 246 N. W. 326, as authority that speed cannot constitute causal negligence when two vehicles moving in opposite directions collide, but careful reading of the opinion in that case will disclose that it does not lay down so broad and all-inclusive a rule. Excessive speed certainly is causal when it prevents or retards the operator, after seeing danger, from slowing down or stopping in time to avoid a collision. *Thelen v. Machotka,* 268 Wis. 1, 66 N. W. (2d) 684."

The jury could properly determine that Jewell's negligent speed combined with his negligent lookout was causal because it prevented him from slowing down or stopping in time to avoid the collision.

Appellants advance a rather persuasive argument that the plaintiff Martha Jewell had assumed the risk of her husband's negligent speed. However, we find it unnecessary to pass upon such issue because of our conclusion that the jury's finding of causal negligence on the part of Jewell as to lookout must stand. There clearly was no assumption of risk as to such lookout. Therefore, even if there were an assumption of risk as to speed, the judgment in favor of Martha Jewell is supported by the finding of causal negligent lookout made against Alfred Jewell. This is because if a host-driver is found causally negligent in two respects, and the plaintiff guest is found to have assumed the risk of only one of such two grounds of negligence, such assumption of risk does not bar recovery as to the ground of negligence not assumed. *Bronk v. Mijal* (1957), 275 Wis. 194, 202, 81 N. W. (2d) 481.

The special verdict awarded Mrs. Jewell $21,250 damages for pain and suffering and physical disability and $3,863.50 for medical and hospital expenses incurred at the Pippin Clinic and the Richland Hospital. Judgment was rendered in Mrs. Jewell's favor for the total amount of such two sums or $25,113.50, together with costs and disbursements against Alfred Jewell, his insurance carrier, and Schmidt, and for a

lesser amount against Schmidt's insurance carrier because the amount of found damages exceeded the limits of the latter's policy. On this appeal the appellants challenge the right of Mrs. Jewell to recover the $3,863.50 medical and hospital expenses against her husband and his insurance carrier.

The early rule was that it was the husband's absolute duty to pay for medical services to his wife, and that this duty could not be altered even where the wife agreed to pay the bills, recognized them as her personal debt, and in fact made payments on them from time to time from her separate estate. *Stack v. Padden* (1901), 111 Wis. 42, 86 N. W. 568. This absolute bar has been softened by subsequent decisions, based on the statutes extending the legal rights of married women. The present rule is that a married woman may contract for medical services in her own right, but, in the absence of the establishment of such an express contract between the wife and the person rendering the service, the husband, and not the wife, is the person liable for such expenses and the one entitled to recover for them. *Baum v. Bahn Frei Mut. B. & L. Asso.* (1941), 237 Wis. 117, 295 N. W. 14; *Landskron v. Hartford Accident & Indemnity Co.* (1942), 241 Wis. 445, 6 N. W. (2d) 178.

Part of Mrs. Jewell's medical and hospital bills were paid out of the proceeds of insurance carried for her by her husband. On the husband's adverse examination he was asked who was going to pay the balance owing on such bills and he answered, "I suppose she will." After the medical and hospital services had been rendered, Mrs. Jewell went to the Richland Hospital and the Pippin Clinic and promised to pay the balance of the hospital and medical bills owing to them. In fact, such promises were not made until after the taking of the husband's adverse examination at which he had given the above-quoted answer.

Any promise to pay on the wife's part after the rendering of the services was without consideration and did not result in an enforceable contract coming into existence. This is because at the time of the rendering of the service the law implied a promise on the part of the husband, not the wife, to pay for such services. There is no evidence in the record that the hospital and clinic originally extended credit to Mrs. Jewell for the services rendered. Therefore, when Mrs. Jewell made her promise to pay she was not promising to pay her own debt but the debt of another. Nothing was received by her, or by any third person, in return for her promise which possibly could meet the test of consideration laid down in Restatement, 1 Contracts, p. 80, sec. 75.

We, therefore, hold that it was error to include in the judgment rendered in behalf of Martha Jewell against the appellants Alfred Jewell and his insurance carrier the amount of the medical and hospital expenses for her care necessitated by the accident, and such judgment must be modified to eliminate the $3,863.50 included to cover the same.

*By the Court.*—The judgment rendered in behalf of Martha Jewell which is recoverable from the defendant Alfred Jewell and his insurance carrier is modified by reducing the same by the amount of $3,863.50, and, as so modified, said judgment is affirmed. The other judgments appealed from are affirmed. The appellants shall be entitled to tax costs against the plaintiff Martha Jewell, and the defendant Schmidt and his insurance carrier shall be entitled to tax costs against the appellants.